## WIMPY vs. GASKILL.

1. Where a party, though knowing at the trial that the answers of an adverse witness to interrogatories were written out by the witness, made no application to continue, so as to have opportunity to ascertain whether the writing was done at the request and in the presence of the commissioners, but discovered after verdict, and after a motion for a new trial had been denied, that they were written apart from the commissioners, and before they knew anything whatever of the commission or the interrogatoties, this defect in the mode of executing the commission is not such a fraud upon the losing party as will entitle him to a new trial in equity, there being no suggestion in the bill, and no reason to conclude, that the testimony of the witness would have been otherwise than what it was, or of any less weight, had the answers been written at the request and in the presence of the commissioners.

2. That, at the time of trial, certain letters relevant to the issue were misplaced, and after diligent search could not be discovered, would lay the foundation for proving their contents. On discovery of the letters after verdict, etc., their contents not having been put in evidence, a bill for new trial is not maintainable because the letters were misplaced; more especially, if their contents would merely serve to corroborate one side in a conflict of parol evidence, and not, of themselves, be decisive of the controversy.

October 15, 1887.

Fraud. Interrogatories. New Trial. Evidence. Before Judge MARSHALL J. CLARKE. Fulton Superior Court. March Term, 1887.

Reported in the decision.

JOHN A. WIMPY, *in propria persona*, for plaintiff in error.

JOHN COLLIER, for defendant.

BLECKLEY, Chief Justice.

In September, 1876, the complainant, as an attorney at law, together with one Smith, entered into a written contract with the father of the defendants in this bill, by which they agreed to attend to the litigation that " might arise or has arisen and now in court " in three certain cases to which the father was a party, and perhaps also at that time some of the defendants may have been parties. Services were rendered, and by subsequent arrangement a change was made in the cases, under which the defendants became apparently the chief litigating parties, if they were not so already; and the services were then continued for their benefit until some of the cases terminated. By the terms of the written contract, the attorneys were entitled to $100 in each case, conditional upon a favorable result, and in the event of a compromise or settlement, to one-half of that fee; besides which they were entitled to a certain fee of $100 on the termination of all the litigation.

In February, 1882, the complainant brought an action against these defendants, at law, upon an account of about $900, for services rendered in connection with certain specified cases, which seem to have been related to the three cases embraced in the written contract with the father. This action was defended upon the general issue and one or more special pleas.

In October of the same year, a commission issued, in this suit at law for fees, to take the testimony of the father, who resided in the State of Vermont. The interrogatories were in behalf of the defendants, and the questions propounded were intended to elicit testimony, first, upon the execution of the written contract; secondly, upon the question whether services had been rendered under any other contract, or whether any other contract had been made; and thirdly, upon any and all facts favorable to the defendants. Those interrogatories were not crossed by the complainant here, the plaintiff in that action, but after

service upon him, were sent to the witness with commission attached; and in the following month, November, 1882, they were answered, and the answers, together with the commission and interrogatories, were duly returned, as far as appears, to the superior court, from whence the commission issued. In that testimony the witness stated that the contract, a copy of which was annexed to the interrogatories, was executed, that service was rendered under it, and that all service, both to the witness and these defendants, his children, was rendered under that contract, and there was no other.

Soon after the return of the interrogatories, the complainant (then the plaintiff) not knowing that they had been returned, they were taken out of the clerk's office by the counsel of the defendants in that case, and they were kept out, the complainant not knowing of their existence any further than he was advised by the fact that the interrogatories had been served on him, until the case at law was under trial and the trial was progressing; and then the package was produced by counsel, tendered in evidence, and objected to, and the objection was overruled. The case was tried and resulted in a verdict for the defendants. That occurred in May, 1885.

On July 3d, during the same term of the court, a motion was made for a new trial. One of the grounds of that motion was, that the answers of that witness were written by himself, and that it did not affirmatively appear that he did the writing at the request and in the presence of the commissioners. The other grounds of the motion related to the charge of the court, and to the verdict being without evidence, against evidence, against law and equity, etc. The motion was overruled on the 11th of July.

On the 22d of July, the same month, the two persons who purported to have acted as commissioners in taking the answers to the interrogatories, made an affidavit in which they explained the circumstances under which they

acted. They stated that the witness brought the papers to them, they knowing nothing of them before, and requested them to administer the oath to him, and explained to them how to sign up and make return; they state that they made the return of the papers, (they are silent as to whether they administered the oath,) and that they relied upon him altogether, they knowing nothing about what was requisite, and that the whole transaction occupied only about one minute.

On the 29th of July, the same month, a second motion for a new trial was made by the complainant, the plaintiff in that action, in which this matter was set up. That motion was denied; and a writ of error was sued out and brought to this Court, and the judgment denying both motions was affirmed.

In August, 1886, this bill was filed, praying that the verdict be set aside and a new trial granted for fraud. The fraud alleged consisted in the fact that the interrogatories were illegally executed, with a design and purpose on the part of the witness to commit a fraud, and that his evidence in the answers was false. Subsidiary to this ground is another, which sets up the discovery of thirty odd letters written by the witness to the complainant while the old litigation was pending. Three of these letters were exhibited to the bill, and it is alleged that they are a fair sample of the rest. The first of them bears date in October, 1877, the second in May, the third in June, 1879. The bill alleges that these letters had been mislaid, that diligent search had been made for them before the trial at common law, that they had not been found until after the trial, and after the motion for a new trial had been determined. When found, one of them, that of June, 1879, proved to contain, amongst other matters, this statement: "You will have to make the whole fight in their names, (speaking of the children, these defendants,) and as I told you, I will see that they pay you well for your services." That is the strongest and most relevant

expression in any of the correspondence exhibited to the bill.

1. It is not alleged that the existence of these letters was unknown or not remembered at the time of the trial; it is only alleged that they were mislaid and could not be found by diligent search. It is not alleged that there was any impediment whatever to proving their contents; no explanation is given why their contents were not proved on the trial. It is not stated that the complainant had forgotten, or that there was no one else acquainted with their contents. In short no reason for not introducing evidence of the existence, loss and contents of these letters appears in the bill. It is not alleged in the bill that the defendant had any connection whatever with the manner of executing the interrogatories. It is not alleged that they or their counsel knew the fact that the answers had not been written in the presence of the commissioners and at their request It is not alleged that any person knew it except the witness and the commissioners. It is not alleged that any enquiry had been made, after it was ascertained that the answers were in the handwriting of the witness, to learn whether the answers were written in the presence and at the request of the commissioners or not. It is not stated when that information came to the complainant, or how it came. He did not get it until after the original motion for a new trial had been ruled against him in the superior court, but why he did not get it before, or how he came to get it at all, is not explained. It does not appear how he was put to enquiring about it, more than that it appeared from the interrogatories, or from some admission made at the trial, that the answers were written by the witness. It is not alleged that he made any application to the court when he discovered that the answers were written by the witness, to continue the case, or postpone it, in order that he might enquire whether the conditions existed or not, making it legal for the witness to write his own answers. It is not alleged that the inter-

rogatories were taken out of the office by counsel for any improper purpose, or with any improper intent, or that the disposition which they made of the interrogatories was intended or designed to contribute to any fraud or any wrong whatever. Indeed, there is no insinuation in the bill that counsel had any design or intention inconsistent with professional rectitude.

The bill was demurred to generally for want of equity, and the demurrer was sustained.

Looking into the exhibits, and interpreting the bill by them, as the bill itself by its structure contemplates shall be done, we see no fraud whatever committed by anybody, unless it be a fraud for a witness to write out his answers and carry them to the commissioners and be sworn to them in this way ; and that certainly would be a fraud if his evidence was materially different, when put up in that way, from what it would have been if he had been examined regularly; but there is no intimation in this bill that such was the fact. The bill and exhibits show to our complete satisfaction that if he had been examined before a board of bishops, his evidence would have been exactly what it was. There is not the slightest indication that it was different from what it would have been if he had been examined in the most regular and formal manner possible. So that if this was fraud upon the law, as it is characterized, it was one which apparently did the complainant no injury.

2. As to the letters, it is a somewhat singular fact that there was no enquiry, by cross-interrogatories of this witness, as to whether he had written them. There were no cross-interrogatories at all. It would seem that if the letters contained material evidence, and were lost, there was an opportunity of proving their contents by this witness, or at least of calling his attention to them. He might have explained the expression I have recited, and all the rest of the contents of the letters. A possible explanation which occurs to us is this : He might have had,

or thought he had, the complainant bound by the written contract to render all the services in question, and yet, to stimulate his diligence, might have told him that the children would pay him well in addition. The expressions in the letter do not necessarily involve the making of another contract, either by the children directly, or by the witness for them. There is nothing in this record which we think would be absolutely decisive of this controversy were a new trial granted.

The result of the action at law took place in consequence of irreconcilable conflict in the testimony, the father of the defendants swearing one way, and the plaintiff swearing the other; and we do not believe that this written evidence, if it were in, would necessarily control another finding, and produce a different result. This is merely cumulative matter, tending to corroborate and strengthen one side of the case, upon facts which were fully litigated on the trial at common law. If it would absolutely control it, as would a deed or a note, or perhaps a receipt, where such things are in controversy, it would be otherwise.

Were this a written contract that had been lost and discovered, instead of being mere epistolary declarations or admissions of a person not a party to the cause, and were there no question of negligence on complainant's part, the bill would be one which equity ought to retain, and if nothing else appeared, decree in favor of a new trial. But to uphold this bill would simply be to set the parties adrift again, with the letters, to aid one of them and obstruct the other. How the new voyage would terminate we cannot forsee. It is too uncertain.

Judgment affirmed.