(June 26, 1906.)

## STATE, Respondent, v. D. J. WILLIAMS, Appellant.

### [86 Pac. 53.]

CRIMINAL PRACTICE—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT—
    NEWLY DISCOVERED EVIDENCE—HORSE COLT SUBJECT OF LARCENY.

1. Where it is shown that W. took into his possession a colt belonging to K. and branded such animal, claiming it to be his property, and on a trial upon the charge of grand larceny he is found guilty as charged, the judgment will not be reversed where it is shown that all the facts connected with the alleged larceny were before the jury, and that the evidence was sufficient to warrant the verdict.

2. Upon application for a new trial on the ground of newly discovered evidence, a new trial will not be granted unless due diligence is shown, and that it is probable a different result might follow another trial.

3. An information that charges the unlawful and felonious taking of a ''gray horse colt'' charges grand larceny under section 7048, Revised Statutes.

(Syllabus by the court.)

APPEAL from District Court of Bingham County. Hon. James M. Stevens, Judge.

Appellant was charged with the crime of grand larceny, was tried, convicted and sentenced. He appeals from the judgment and from an order overruling a motion for a new trial.

Bowen & Watson, for Appellant.

The defendant's explanation of his possession was reasonable and fair, and amply corroborated and uncontradicted in every respect, and should not have been disregarded. (*State v. Seymour*, 10 Idaho, 712, 79 Pac. 825.) The greater part of the newly discovered evidence was not cumulative under

the definition of the same by this court. (*Flannagan v. Newberg*, 1 Idaho, 78.)

The statute, section 7048, Revised Statutes, by implication excludes colts from the list. Why was it necessary to specifically include the young of cattle and specifically exclude the young of horses? It is true that the word "horses" is a general term, and would by itself probably include the young. But why did the legislature exclude colts from the list?

J. J. Guheen, attorney general, Edwin Snow and Philip R. Hindman, for Respondent.

The weight to be given to an explanation by the defendant of his possession of recently stolen property is exclusively for the jury. (*State v. Ireland*, 9 Idaho, 686, 75 Pac. 257.)

Newly discovered evidence which is merely cumulative is not ground for a new trial. (*People v. Biles*, 2 Idaho, 114, 6 Pac. 120; *State* v. *Davis*, 6 Idaho, 159, 53 Pac. 678.) Affidavits alleging newly discovered evidence are of no avail when it appears that such evidence simply tends to the impeachment or contradiction of witnesses upon immaterial matters. (*State v. Hardy*, 4 Idaho, 478, 42 Pac. 507.)

The information alleges the felonious taking of a horse colt. The word "colt" simply describes in a way the age of the horse.

STOCKSLAGER, C. J.—The defendant was charged with the larceny of one gray horse colt, the property of Henry S. Woodland. On his trial he was convicted of the crime of grand larceny and thereafter sentenced to serve a term of three years in the state penitentiary. A motion for a new trial was filed and denied. The appeal is from the judgment as well as from the order overruling the motion for new trial. The record discloses five assignments of error as follows: 1. "The court erred in denying appellant's motion for a new trial for the reason that the verdict was contrary to the evidence and wholly insufficient to support the ver-

dict.  2. The court erred in denying appellant's motion for
a new trial for the reason that the verdict was contrary to
and against law, and contrary to the instructions given by
the court.  3. The court erred in denying appellant's motion
for a new trial on the ground of newly discovered evidence.
4. The court erred in refusing to permit appellant to ask
the following question of the witness George S. Davis: 'I
will ask you if it is not the practice of the people living in
that neighborhood to turn their stock on the Asylum pasture?'
5. The court erred in passing sentence and rendering judg-
ment for the reason that the information does not allege facts
sufficient to constitute a public offense.''

It will be observed that the assignments above quoted
largely refer to the insufficiency of the evidence to support
the verdict.  Learned counsel who made the oral argument
in this court on behalf of the appellant with commendable
ability and, we are satisfied, the best of faith, insisted that
the evidence was not of a character that should warrant a
conviction.  There is no claim of conflicting evidence dis-
closed by the record.  The possession is not questioned.  That
appellant took the colt alleged to have been stolen from the
range or a pasture that seems to be somewhat of a public one
known as the ''Asylum'' pasture, near the town of Black-
foot, to his own premises a short distance from the pasture,
and branded it with his own brand, is admitted by appellant.
That the colt was taken from the pasture by appellant and
his three sons about 9 o'clock in the morning, and driven
along a well-traveled highway to the premises of appellant,
where it was branded, is not contradicted.  With these un-
disputed facts before the jury, it was only necessary for it
to determine appellant's good faith in branding the colt in
controversy.  It is shown by the record that appellant
claimed to have traded for a gray horse colt and a brown
mare colt in the fall of 1904, with a man by the name of
Weaver, and that he kept them on his premises during the
winter of 1904-05.  He says he took possession of them in
September, 1904, and last saw them about the middle of
April, 1905.  He further says that the reason he did not see

the colts later than that last spring was because about the latter part of April he went off to work for the Wood Livestock Company and returned about the 1st of June. Again he says: "What led me to think them (the colts) were mine was this: Late last fall the mare got into a wire fence and she had cut her leg, and I knew them by this cut on the mare colt. She cut her leg in front crosswise of the left hind leg. I saw such a mark on the brown mare colt." On cross-examination he testified: "I knew this man Weaver about three months. It was about three months from the time I first saw him until I got the horses. As soon as I got the colts he left the country. Never heard of him again. I did not get a bill of sale of these colts. They were not branded at the time I got them." Again, on cross-examination he says: "The road that runs past my house is not a road that is traveled very frequently. It is not a public highway through the country. It is not traveled by the Indians. They don't use it as a regular road." Frank Martin testified, among other things, as follows: "I have resided in this county about three years. I was born in Montana. I am a half-breed Indian, Shoshone Tribe. . . . . I know Mr. Williams, the defendant, just by sight. I have known him about two years. I know a man by the name of Weaver. He is my wife's stepfather. I have known this man Weaver about three years. . . . . I do not know where he is now. . . . . I know something about Weaver owning a brown mare colt and a gray horse colt. The gray colt is an iron gray horse colt. I don't know when it was born. I should say the colt would now be fifteen or sixteen months old. . . . . It had a white stripe on its face. The brown colt was a mare colt. Its age would be about the same as the other. . . . . I paid particular attention to these colts because they had been promised to me by Weaver. . . . . He disposed of these colts to Mr. Williams." On cross-examination he said: "I was not present when I claim Mr. Weaver disposed of these colts; of my own knowledge I don't know what he did with them." On redirect examination he says: "I only saw the colts once during the time they were in the possession of Weaver."

George McDaniels testified that: "He was going on twenty years old and had resided in Blackfoot all his life. My occupation has been riding principally. . . . . I know the defendant. . . . . I know something about a gray and brown colt that Mr. Williams had. . . . . I last saw them along in the early part of last spring. I saw them in his corral. I saw them off and on all winter. I never took any particular notice of them, although I knew them. I noticed them so I could describe them. . . . . To the best of my knowledge they were the same colts I saw in Mr. Williams' possession last spring." Describing the brown mare colt he said: "She was a brown mare colt with a stripe in her face that run a little above her eyes, and she had a cut on her left hind leg. The scar ran pretty nearly around the leg from the inside to the outside."

Tom Lyons testified he had lived in Blackfoot twenty-two years. ".'I ride the range for myself. . . . . I have seen on his place a gray and brown colt. I last saw them last spring somewhere about the 1st of April. I did not take particular notice of them. I could not describe them in any respect no more than one was gray and the other was brown. I know the gray one was a horse."

In rebuttal, George S. Davis testified: "I am familiar with the stock of defendant and have been for two years. I saw his horses during that time nearly every day. Their pasture joins my pasture. I never saw in the defendant's pasture or under his control two colts similar to the colts in question. I never saw a gray colt. I never saw a brown mare colt in his possession, similar to the brown mare colt I testified to."

Charles Sims testified he was acquainted with the brown mare colt claimed by the prosecuting witness. "I have been acquainted with it since it was foaled. I owned the mother of the colt. I owned it until January. I parted with title of the colt to Mr. Woodland."

The prosecution had traced the ownership and possession of the colts from the time they were foaled down to the time they were branded by appellant, and we think sufficiently to establish beyond a reasonable doubt that the gray colt was

the property of the prosecuting witness, Woodland, and at no time had been the property of appellant. In view of all the facts and circumstances disclosed at the trial, the question for the jury to determine was: Whether appellant honestly believed the gray colt in question was his property at the time he drove it from the Asylum pasture to his own premises and then branded it. If so, under the instructions given them by the court, it was their duty to return a verdict of not guilty. On the other hand, if the jury believed from the evidence and circumstances disclosed by the trial that appellant knowingly took the property of another from the Asylum pasture, or elsewhere, to his own premises and there placed his brand upon the colt in controversy, thereby claiming the ownership and right to the possession of such colt, under the instructions of the court he was guilty of grand larceny, and it was their duty to so find by their verdict. It is apparent from the record and the verdict of the jury that the explanation of appellant of all his acts in connection with the possession and branding of the colt in controversy was not satisfactory. The jury had the opportunity of carefully weighing the evidence of each and all the witnesses who were before them. They were impaneled for the express purpose of passing upon all disputed questions of fact, and were instructed that they should give the defendant the benefit of every doubt, and unless satisfied beyond a reasonable doubt of his guilt, they should acquit him. We find nothing in the record indicating that there was any bias or prejudice against appellant in Bingham county, the place of trial, or that he did not have a fair and impartial trial at the hands of the twelve citizens of that county who composed the jury; hence, under the repeated decisions of this court, as well as all courts throughout the country where the jury system prevails, this verdict should not be disturbed on appeal, unless it is apparent that there has been an abuse of the trust imposed in the lower court or jury, which is not disclosed by the record in this case.

There is no complaint on behalf of counsel for appellant that the instructions given by the court were not fair and

correctly stated the law. The only complaint we find in the record pertaining to the admission or rejection of evidence is assignment No. 4. It is disclosed by the record that the Asylum pasture was used quite generally by people having stock in that vicinity, and we do not see how any harm could have followed an answer to the question, to wit: "I will ask you if it is not the practice of the people living in that neighborhood to turn their stock in on the Asylum pasture?" Neither do we see how any answer, no difference what it may have been, could have benefited appellant; hence, if error, it was harmless, and in no way could entitle appellant to a new trial.

The third assignment is based on the refusal of the court to grant a new trial on the ground of newly discovered evidence. Several affidavits are filed in support of this application, as well as a number in many respects contradicting statements contained in the affidavits in support of the application.

Evaline Wilde, a girl eleven years old at the time she makes the affidavit, testifies that in the fall of 1904 she saw two colts running in the pasture of appellant; that they frequently got into the field of her father, who lives near the Williams' farm, or did at that time; that at frequent intervals she, with others, had occasion to drive the colts out of her father's field; that on one occasion the brown colt attempted to jump a barbed-wire fence and hung on the wires and cut its leg—she thinks the hind one. She describes the colts as one a gray and the other a brown.

A. O. Belleville testified that he had a horse in the pasture of appellant in the fall of 1904, and on different occasions visited the pasture to see how his horse was doing; that he noticed in the pasture a gray colt; also a brown one; and that the brown colt had a bad cut near the hock joint on one of its hind legs which caused it to hobble as it walked, and that he paid particular attention to said colts on account of the severity of said cut. Other witnesses testified to seeing colts, a gray and brown, on the premises of appellant in the fall of 1904. In rebuttal of these affidavits, a number

of affidavits are filed contradicting statements contained in the affidavits filed on behalf of appellant. As we view the showing made by counsel for appellant and the counter-showing made by the prosecuting attorney, the jury, in case a new trial were granted, would be left in about the same position as the one that heard the case before. Witnesses testify that the colts seen on the Williams premises were what is known as ''Cayuse'' stock, whilst the colts claimed by the prosecuting witness that were branded by appellant were of a better grade or quality of animals. Even though sufficient diligence were shown, we do not think we would be justified in awarding a new trial on the showing made, considered with the counter-showing. This is especially true where such applications are largely within the discretion of the trial court.

In *State v. Hardy,* 4 Idaho, 476, 42 Pac. 507, this court said: ''Affidavits alleging newly discovered evidence are of no avail when it appears that such evidence simply tends to the impeachment or contradiction of witnesses upon immaterial matters.'' See, also, *People v. Biles,* 2 Idaho, 114, 6 Pac. 120; *State v. Davis,* 6 Idaho, 159, 53 Pac. 678, in which the question of newly discovered evidence is discussed.

There is no merit in appellant's sixth assignment that ''the court erred in passing sentence and rendering judgment, for the reason that the information does not allege facts sufficient to constitute a public offense.'' It is urged that the charge being the larceny of ''one gray horse colt,'' it is not included within the term ''grand larceny'' as defined by section 7048, Revised Statutes, which provides, among other things, the taking a ''horse, mare, gelding,'' etc. It is said ''the section by implication excludes colts from the list.'' We do not so construe this section of the statute. In order to constitute grand larceny, the felonious taking of any domestic animal constitutes the crime without regard to value, and the word ''colt'' merely described the age of the animal. If it were true, as urged by counsel for appellant, that for the reason the statute does not in words mention a colt, the taking is not larceny, one might steal a band of them, or a band of lambs,

or as many pigs as he could conveniently handle, and yet not be guilty of larceny. The judgment is affirmed.

Sullivan, J., concurs.

AILSHIE, J., Dissenting.—It is difficult to understand how a jury, uninfluenced by anything other than the evidence that appears in this record, could have returned a verdict of conviction. But conceding the sufficiency of the evidence to justify the verdict, the defendant on his motion for a new trial has produced affidavits of witnesses that it is clearly shown he knew nothing of prior to the trial, which affidavits show facts most material to his defense. The theory of the state all the way through the case appears to have been that the defendant never, in fact, owned the two animals he claimed to have lost, and that he claims to have taken up and branded. The affidavits on motion for a new trial show quite conclu‧ sively that the defendant did have two such animals, and that the resemblance was so marked that some of the witnesses were unable to distinguish between them. This was shown by as many as five witnesses. One witness, Thomas Hines, testified to having told the prosecutor that he would testify to these facts soon after defendant's arrest, and he went with the prosecutor to see the animals and called his attention to the marked resemblance; but defendant does not appear to have been apprised of this until after the trial, when he sent his attorney to Chehalis, Washington, to interview the witness. Evaline Wilde, a child of eleven years old, makes affidavit that during the fall of 1904 these colts got into her father's field, and that she drove them out, and the brown colt cut its leg on the barbed wire. This was a most material fact, as the defendant had identified the animal by this wire‧ cut. It is also strange that the prosecuting witnesses themselves had never noticed this wire cut on the animal until the defense called their attention to it. It shows how easily witnesses can be mistaken in their identification of growing range animals. With this showing it seems to me that a new trial ought

to be ordered; it would enable the defendant to present all his evidence, and, if innocent, vindicate himself; and, on the other hand, the state in this particular case could suffer no possible prejudice by a new trial if the defendant is in fact guilty, as his guilt could as easily be shown on another trial.