(January 5, 1907.)

STATE, Respondent, v. IRA COOK and BORA A. BRUSHWOOD, Appellants.

[88 Pac. 240.]

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—LOSS OF EVIDENCE—NEGLIGENCE AND WANT OF DILIGENCE—NEW TRIAL—DISCRETION OF COURT—ADMISSION OF EVIDENCE—ADMISSION OF CONVERSATION—CONFLICTING EVIDENCE.

1. Where a defendant concludes that it is necessary in a grand larceny case to produce, for the inspection of a jury, certain colts resembling in color and kind the colts alleged to have been stolen, and takes them to the place of trial at one term of court, and the

## Points Decided.

cause being continued until the next term, thereafter turns said colts out upon the public range and they stray away and are lost, and after diligent search he fails to find them, and believing "his defense to be strong enough to proceed to trial without the production of said colts, and desiring a speedy trial," made no application for a continuance for time to produce said colts, he is not entitled to a new trial on the ground of newly discovered evidence in order to produce said colts for the inspection of the jury.

2. A new trial will not be granted on account of absence of witnesses where it is apparent that the witnesses were known at the time of the trial, but could not be found, and no continuance is applied for on that ground.

3. In such a case the defendant enters upon the trial at his peril if he fails to make application for a continuance on account of the absence of witnesses.

4. The present condition of a colt fourteen months old, offered for the inspection of a jury, would not be the same as the animal would be three years later, or when the colt was four years old, and "the autoptic proference is allowable only on the assumption that the condition" of the object so offered is the same or sufficiently similar as it was at the time the act complained of occurred.

5. The granting of a new trial is largely in the discretion of the court.

6. Where the evidence offered on motion for a new trial is not newly discovered, the refusal of the court to grant a new trial will not be disturbed.

7. Where the action is prosecuted for the larceny of an animal, and evidence is admitted over the objection of counsel for the defendant to show that such animal was not in the owner's possession at the time of the trial, but had been taken or had escaped therefrom, it is not reversible error to admit such evidence.

8. It is not error for the court to admit the testimony of a witness for the state showing that a witness for the defendant had attempted to persuade him not to testify in the case, as such evidence tends to show the bias or interest of such witness.

9. Where there is a substantial conflict in the evidence, the verdict of the jury will not be disturbed on appeal.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District for Boise County. Hon. Geo. H. Stewart, Judge.

The defendants were convicted of grand larceny and sentenced to a term of four years in the penitentiary. *Judgment affirmed.*

Hawley, Puckett & Hawley, for Appellants.

We believe the true rule to be that where the new evidence would probably bring about a different result, so long as diligence in its search and the materiality of its nature are established, then a new trial should be granted.

The real test of whether a new trial should be granted on newly discovered evidence is: "Is this testimony probably true, and will it likely change the result?" (Spelling on New Trial, par. 226; *Oberlander v. Fixen & Co.*, 129 Cal. 690, 62 Pac. 254; *State v. Bond*, 12 Idaho, 424, 86 Pac. 43.)

The subject of cumulative evidence has many definitions, and among them we find, separate and distinct, evidence of witnesses and real evidence. (1 Elliott on Evidence, p. 13; also paragraphs 23, 24.)

This distinction has been made, and manifestly in the case at bar the newly discovered evidence we presented is not the evidence of witnesses, but real evidence. Surely, this is not evidence of the same kind to the same point. Evidence of a different kind and character from that produced at the trial, though bearing on the same point, is corroborative, and if there be no other objection to it, warrants a new trial. (Spelling on New Trial, par. 228.)

The objection made to the question propounded to the witness Jesse B. De Masters should have been sustained. This question related to a conversation between witness and one Jeffries, a witness for the state, in which the witness advised Jeffries not to testify or make any trouble for Cook. Clearly, this evidence of a conversation in which neither of the defendants were present, nor in which either party was shown to have been authorized to speak as agent for either of the defendants, was neither material, competent nor relevant. It was only asked to prejudice the jury and was entirely incompetent as legal evidence to fasten this crime upon the defendants. Men are not to be convicted and punished for larceny because they drive horses resembling those that have been stolen. That, in brief, is the case against defendants.

"Conceding that there is circumstantial evidence against the defendant tending to establish his guilt, those circumstances can be and are as reasonably explained on other hypotheses than that of defendant's guilt, or as perfectly consistent with defendant's innocence, and for that reason a new trial should have been granted." (*State v. Seymour,* 10 Idaho, 699, 79 Pac. 825; *State v. Nesbit,* 4 Idaho, 548, 43 Pac. 66.)

J. J. Guheen, Attorney General, Edwin Snow and Philip R. Hindman, for Respondent.

The county should not be put to the expense of a new trial merely because the defendants were inexcusably careless with regard to their own property. The law demands of the parties all reasonable diligence and caution in preparing for trial, and furnishes no relief for the hardships resulting from inexcusable negligence or want of diligence. (*Howard v. Winters,* 3 Nev. 542.)

It is the evidence itself, and not merely its materiality, which must have been newly discovered. (*People v. Sutton,* 73 Cal. 243, 15 Pac. 86.) If discovered before or at the trial, and no continuance of the trial was applied for, an answer to the motion that no diligence is shown would be sufficient to defeat it, no matter what else is shown. (1 Spelling on New Trial and Appellate Practice, sec. 207; *Scanlan v. San Francisco & San Joaquin Ry. Co.,* 128 Cal. 586, 61 Pac. 271.)

One must show that evidence introduced on motion for · new trial as newly discovered was first learned of after the trial. (*Curran v. Stange Storage Co.,* 98 Wis. 598, 74 N. W. 377; *Wimpy v. Gaskill,* 79 Ga. 620, 7 S. E. 156; *State v. Lamothe,* 37 La. Ann. 43; *Fagin v. State,* 3 Tex. App. 400; *Garner v. State,* 34 Tex. Cr. Rep. 356, 30 S. W. 782.)

Any question based upon the appearance of the colt now as furnishing any means of identification of the colt three years ago would be incompetent, irrelevant and immaterial. (2 Wigmore on Evidence, sec. 1154.) This is merely cumu-

lative evidence on a point which was testified to on the first trial, namely, the identity of the colts. Cumulative evidence will not warrant a new trial. (*State v. Davis*, 6 Idaho, 159, 53 Pac. 678; *State v. Williams*, 12 Idaho, 483, 86 Pac. 53.)

The granting of application for new trials on the ground of newly discovered evidence is largely within the discretion of the trial court. (*People v. Woon Tuck Wo*, 120 Cal. 294, 52 Pac. 833; *Pengilly v. Threshing Machine Co.*, 11 N. Dak. 249, 91 N. W. 63; *Longley v. Daly*, 1 S. Dak. 257, 46 N. W. 247; *People v. Clark*, 130 Cal. 642, 63 Pac. 138.)

SULLIVAN, J.—The appellants were, by information filed May 26, 1905, accused of the crime of grand larceny. The property alleged to have been stolen was a dark brown mare about fourteen months of age, of the value of $100 and the property of Andrew Evans. On June 8, 1905, the defendants plead "not guilty." Thereafter trial was had and they were found guilty as charged in the information, and each of the defendants was sentenced to the state penitentiary for a term of four years. A motion for a new trial was made setting forth various errors alleged to have been committed by the trial court, and also alleging the insufficiency of the evidence, and by means of affidavits certain alleged newly discovered evidence was set forth which was claimed to be material to the defense. Said motion was argued by respective counsel, and after due deliberation and consideration by the court was denied, and this appeal is from the judgment and order overruling said motion. Numerous errors were assigned in regard to the admission and rejection of evidence; the refusal of the court to instruct the jury to return a verdict of not guilty on the ground of insufficiency of evidence; newly discovered evidence—the action of the court in denying the motion for a new trial, and the insufficiency of the evidence to support the verdict.

The following facts, among others, appear from the record: The complaining witness, Andrew Evans, missed two colts from his pasture on July 9, 1904. After a search of

two or three days he found the colts on or near the premises of the defendant, Ira Cook, some thirty miles distant from said pasture. The animals were freshly branded; one of them was hobbled, and, according to the testimony of Evans, both were concealed in a grove of quaking asp. It also appears from the testimony of several witnesses that the two defendants were seen driving two colts of similar kind and description toward the Cook ranch on July 10th; one of said colts was a brown mare with a white star on her forehead, the other a bay mare colt, both of the age of about fourteen months. It also appears that during the search for said colts the owner went to or near the ranch of the defendant Cook, where he found said colts, and before he found them he observed a neighbor of Cook's ride through the grove where the colts were found and in a short time thereafter go away from the grove. The complaining witness thereupon went to said grove and found his colts there in a jaded condition, skinned and bruised about the head, branded with parallel bar or lazy 11 brand, and one of them hobbled. It also appears from the testimony that a man by name of Weisen was left in charge of Cook's ranch at noon of the eleventh day of July, 1904, and that Weisen usually looked after Cook's affairs about the ranch when he was from home. It appears that the complaining witness went to the ranch of the said Weisen, which adjoins the ranch of defendant Cook, and requested him to assist him in taking the hobbles from the colt, which he refused to do, but he finally loaned him a rope with which to catch the colt and take off the hobbles. The complaining witness thereafter took possession of the colts and took them to his ranch. The reason given by Weisen for his refusal to assist him was that he did not want to get into trouble.

The defendants on their part disclaim any knowledge of how the colts of Evans came to be on or near the ranch of Cook. Defendants admit that on the tenth day of July they did drive a couple of colts from near the complaining witness' ranch, to wit, from the ranch of defendant Brushwood, along the public highway, to the said Cook's ranch, it being

a distance of some thirty miles; they admit that they met
the several witnesses of the state who testified that they met
defendants driving said colts on that date, but they claim
that the colts they were driving belonged to the defendant
Cook; that Cook had a bay and a brown mare of about the
same age and size as the colts in question. The fact that
defendant Cook owned such colts is testified to by several
witnesses. The main dispute, then, is over the identification
of the colts driven by the defendants on the tenth day of
July. It appears from affidavits presented on motion for a
new trial that the defendant Cook took the two colts claimed
by him to Idaho City at the first term of the district court
held in Boise county, in November, 1904, after defendant's
arrest, for the purpose of exhibiting them to the jury on
the trial of this case; that the case was continued until the
June, 1905, term; that said colts thereafter remained in his
possession during the winter of 1904 and 1905; that in the
spring of 1905 said colts were turned out upon the public
range with the intention of procuring them and having them
present at the trial in June; that some time prior to the com-
mencement of said June term of court Cook made diligent
search for his said colts and employed a number of others
to assist him, but they were unable to find the colts; that it
was impossible to produce them at the time of the trial of this
cause for that reason, and believing his defense to be strong
enough to proceed to trial, made no application for a con-
tinuance, and waived all right to a continuance because
of the absence of said colts; that during the trial he dis-
covered it was very necessary to have said colts produced
at the trial, and he believes that the introduction of said colts
as evidence would have secured his acquittal; that said colts
have since been found, and that he will now be able to pro-
duce said colts on the trial in case a new trial is granted.
The material points of the affidavit of defendant Cook are
sustained by the affidavits of several other persons. It is
contended by the attorney general that this is not newly
discovered evidence within the meaning of that term, as the
evidence was known to the defendants long before the trial;

that it was evidence which they had in their own possession and which was lost by them, and, according to their own testimony, through nobody's fault but their own. In support of that contention counsel cite *Howard v. Winters,* 3 Nev. 542, where the court said: "The law demands of the parties all reasonable diligence and caution in preparing for trial, and furnishes no relief for the hardships resulting from inexcusable negligence or want of diligence. When, therefore, a new trial is sought because of newly discovered evidence, it should most certainly be shown by the party making the application that his failure to produce such evidence at the first trial was not the result of any negligence upon his part. Of that fact the court should be perfectly satisfied. To grant new trials upon this ground, where no such showing is made, would simply be giving encouragement to negligence, and judicial approval to inexcusable carelessness." It is also contended by the attorney general that it was the duty of the defendants when they ascertained that said colts were missing, if they thought their production was necessary to their defense, to have made an application for a continuance; that as they failed to do so they are not entitled to have a new trial for that reason. In the affidavit of defendant Cook he says: "Believing the defense to be strong enough to proceed to trial, and desiring a speedy trial, he waived all rights to a continuance beyond the June term." As the law demands reasonable diligence and caution in preparing for trial, it is clear that if a defendant knows of evidence which he cannot procure at the time of the trial without a continuance, and fails to make an application therefor because he believes his defense to be strong enough to proceed to trial, he is precluded thereafter from having a new trial on the ground of absence of such evidence. It would appear to me that the evidence desired was not newly discovered, but that it appeared to defendant after his conviction that the result might have been different if he had produced the colts at the trial. The fact that it would be wise to have the jury inspect those two colts was not discovered since the trial, for the defendant had considered their

production material to his defense, and had taken them to Idaho City for the purpose of introducing them in evidence or having the jury inspect them, on his trial there. It was stated in *People v. Sutton,* 73 Cal. 243, 15 Pac. 86: "It is the evidence itself, and not merely its materiality which must have been newly discovered," and in Spelling on New Trial and Appellate Practice, volume 1, section 207, it is said: "If discovered before or at the trial, and no continuance of the trial was applied for, an answer to the motion that no diligence is shown would be sufficient to defeat it, no matter what else is shown." In *Curran v. Stange Storage Co.,* 98 Wis. 598, 74 N. W. 377, it is said: "One must show that evidence introduced on motion for new trial as newly discovered was first learned of after the trial"; and in *State v. Lamothe,* 37 La. Ann. 43, the court said a new trial will not be granted on account of newly discovered evidence where it is apparent that the witnesses were known at the time of the former trial, but could not be found, and that no delay was asked for on that account.

In the case at bar the defendants knew of the two colts that Cook claimed as his own and which he claimed resembled the Evans colts. His former actions clearly indicated that he considered their production on the trial as material to his defense. That being true, it was his duty before the trial began to apply for a continuance on account of the absence of said colts and his not being able to find them. In *Scanlan v. San Francisco etc. Ry. Co.,* 128 Cal. 586, 61 Pac. 271, the court, in discussing the point under consideration, said: "In such case the defendant should have moved for a continuance, and, failing to do so, the trial was entered upon at the defendant's peril." (See, also, as bearing upon this question, *Fagin v. State,* 3 Tex. App. 400; *Garner v. State,* 34 Tex. Cr. Rep. 356, 30 S. W. 782; *Wimpy v. Gaskill et al.,* 79 Ga. 620, 7 S. E. 156.) There is another reason that presents itself to my mind why the evidence referred to should not be ground for a new trial, and that is, that it could not possibly change the result. The colts were stolen on July 10, 1904; the brown mare was then a

.yearling; if a new trial were granted, the trial would not probably occur until nearly three years after the commission of the crime. The animal would have become a horse about four years old; the change in the animal made by three years' growth would make any conclusion as to its identity very precarious to say the least; and the Evans colts might not be present at the trial for the purpose of comparison. In volume 2, section 1154, of Wigmore on Evidence the author says: "The present condition of an object offered may not be the same as at the time in issue, nor so nearly the same as to be proper evidence of its former condition; accordingly, autoptic proference is allowable only on the assumption that the condition is the same or sufficiently similar." And, again, the identity of the colts was in question on the trial. The evidence received in regard to the similarity of the two colts of the defendant Cook and the two colts of the complaining witness Evans would be cumulative. In 3 Encyclopedia of Evidence, page 937, it is said: "It is a general rule, held or announced in a multitude of cases, that a new trial should not be granted for newly discovered evidence merely cumulative to that adduced on the trial." However, the general trend of some authorities is favorable to the granting of a new trial where the newly discovered evidence is of a controlling or decisive character, or even where it is such as to render a change in the result fairly probable. (*State v. Davis,* 6 Idaho, 159, 51 Pac. 678; *State v. Williams* 12 Idaho, 483, 86 Pac. 53; Underhill on Criminal Evidence, sec. 520.) It is well established that the granting of a new trial is largely in the sound and legal discretion of the court. (*People v. Won Tuck Wo,* 120 Cal. 294, 52 Pac. 833; *People v. Clark,* 130 Cal. 642, 63 Pac. 138; *Commonwealth v. Chance,* 174 Mass. 245, 75 Am. St. Rep. 306, 54 N. E. 551; *Commonwealth v. Miller,* 139 Pa. 77, 23 Am. St. Rep. 170, 21 Atl. 138; *State v. Coella,* 8 Wash. 512, 36 Pac. 474.) If the defendants considered the production of said colts on the trial was of great importance to them, they certainly were negligent in not making an application for a continuance after they discovered the colts could not be found. Where

the evidence offered is not newly discovered, the refusal to grant a new trial on that ground will not be reversed. There was no error in denying the new trial on account of newly discovered evidence.

The next point discussed is the admission of certain evidence relative to the disappearance of the Evans colts after they had been found at Cook's ranch and brought back by the owner. The evidence shows that after Evans recovered the colts they were closely guarded by him, but that on the twenty-seventh day of July, 1904, a little over two weeks after the previous taking, they disappeared from his pasture and were missing at the time of the trial. There is no intimation in the record that the defendants had anything to do with the second disappearance of the colts. It was natural on the trial for the counsel, and perhaps the jury, to want to know what had become of the Evans colts. Under all the facts of the case we do not think it was reversible error to admit such evidence.

Another error assigned is as to the admission of conversation between defendants' witness De Masters and the state's witness Jeffreys. It appears from the testimony elicited by the questions objected to that De Masters had gone to Jeffreys and had endeavored to dissuade him from testifying against the defendants on the trial. This evidence was introduced to show the bias and prejudice of the witness De Masters, his interest in the matter in trying to persuade witness for the state to leave the state and not testify. It was not error to admit this evidence.

Another objection under this head was to a question asked the state's witness, Hillman. This witness testified that he met the defendants on the tenth day of July, driving with other horses the colts of Evans, and the question was as to whether the witness was in a position to have seen a brand on the brown colt had there been one there at that time. Hillman answered that question by giving the distance he was from the colt at different times, and saying that he was near enough so that he would probably have seen the brand if there had been one. This question was

entirely proper, and the trial judge did not err in admitting the answer.

As to the sufficiency of the evidence to sustain the verdict: In this case there is a very decided conflict in the testimony. If the testimony of the complaining witness and other witnesses on behalf of the state is true, there is no escaping the conclusion that the defendants are guilty. If the state's testimony is true, the defendants' witnesses testified falsely, and if the defendants' witnesses testified to the truth, the state's witnesses testified falsely. The evidence is of such a character that the discrepancy between the testimony of the state and the defendants cannot be accounted for on the ground of honest mistake. Aside from the oral testimony the state's witnesses have to corroborate them is the fact that the stolen colts were found freshly branded on or near the ranch of the defendant Cook, and that the man Weisen, who had charge of Cook's ranch, acted in a very suspicious manner when Evans requested him to assist him in unhobbling the colt. Evans testified as follows: "I finally found the animals; I found them on Ira Cook's place. They were both branded, and the unweaned colt was hobbled. They were between a quarter and a half a mile east of his house, in a pretty thick thicket of quaking asp, in a little kind of basin. The animals were not branded when they left my place on the 9th of July. The brand that I saw on them at this time was two straight bars on the right shoulder." It afterward appears that Evans was not right sure whether the animals were on Cook's ranch, as he did not know where the exterior lines were, and he further testified: "I am not positive they were on Cook's place. .... I swore it was inside his inclosure, but not positive it was his land." To show that Weisen had charge of the ranch for Cook, Cook himself testified: "When I left to go down on this Squaw creek roundup I left Weisen in charge of my horses." Besides the fact of the colts being found on or near Cook's place, four witnesses on behalf of the state testify that they saw the defendants driving those colts. It is contended by counsel for defendants that the

testimony of said four witnesses is of a very uncertain character, and they insist that it does not positively identify the horses. The witness Hillman testifies as follows: "To the best of my knowledge and belief, the colts that I saw in my corral on Thursday or Friday following the 10th of July were the same colts that I met on the Fawn Creek bridge on the 10th of July." This witness saw said colts on the said bridge on the 10th of July, when they were in the possession of the defendants, and being driven toward Cook's ranch. After Evans had recovered them on the twelfth day of July he took them to Hillman's corral. Hillman's identification is based upon observations made only two or three days apart. While his evidence indicates that he might have been mistaken, yet his evidence, taken as a whole, shows that he was fully convinced they were the same colts. After several hypothetical questions as to the possibility of his being mistaken in his identification, state's witness Hite testified that: "The colts that I saw defendants driving on the 10th were certainly the same ones that I saw Pete Evans drive past my place a day or two afterward." And state's witness Jeffreys testified that "I had only seen Evans' colts three times prior to this (July 10th). My best judgment is they filled the description of Evans' colts. . . . . If they wasn't, they were dead matches for the colts." So far as the record shows, all of these witnesses were disinterested, and the defendant Cook himself testified that Hillman and Jeffreys were friendly to him. The defendants' witnesses, on the other hand, were their friends and associates. One of them was father in law to Brushwood. Their witness, Weisen, had worked for Cook for a number of years. Some of the defendants' witnesses testified that they saw the defendants on the 10th of July, and they were driving two colts that belonged to the defendant Cook, which resembled the colts belonging to the complaining witness Evans; that they knew they were Cook's colts.

It will, therefore, be observed that there was a most violent conflict in the evidence, and under the law it is the province of a jury in such a case to determine the credibility

of the witnesses and the weight that should be given their testimony. In Underhill on Criminal Evidence, section 215, it is said: "The credibility and weight of evidence are for the jury exclusively"; and in 3 Encyclopedia of Evidence, at page 753, that "The jury are the sole and exclusive judges of the credibility of witnesses"; and in 6 Current Law, page 1992, "The credibility of witnesses and whether they have been successfully impeached are questions exclusively for the jury."

The jury found that the testimony of the witnesses for the state was entitled to the greater weight, and the well established rule of this court applies that where there is a substantial conflict in the evidence, the verdict of the jury will not be disturbed on appeal. The court did not err in overruling the motion for a new trial on the ground of the insufficiency of the evidence. As we find no error in the record, the judgment of the lower court must be affirmed, and. it is so ordered.

Stockslager, C. J., and Ailshie, J., concur.

(January 14, 1907.)

Per CURIAM.—In this case, since the decision of the court was announced and prior to the transmission of a certified copy of the judgment to the clerk of the trial court, our attention has been called, by both the attorney for the defendant and the county attorney who prosecuted the case, to certain defects in the evidence as to the defendant Brushwood. The prosecuting attorney has also expressed grave doubts as to the guilt of this defendant, and after a further examination of the record, and consideration of the entire case and the representations that have been made by counsel, we are of the opinion that a mistake has been made as to the defendant Brushwood, and that we should have granted him a new trial. The opinion as heretofore filed will be modified to the extent that a new trial will be granted to the defendant Brushwood, and the judgment will be affirmed as to the defendant Cook, as previously announced.