FEDERAL MINING AND ENGINEERING COMPANY, LTD., A NEVADA CORPORATION, APPELLANT, v. ROBERT M. POLLAK, RESPONDENT.

No. 3213

January 4, 1939.                          82 P. (2d) 1008.

*Walter Rowson,* for Appellant:

*Forman & Forman,* for Respondent:

## OPINION

By the Court, DUCKER, J.:

The plaintiff in the lower court, respondent here, commenced this action for the foreclosure of a mortgage on certain mining property and personal property appurtenant thereto.

It was alleged in the complaint that the mortgage was given by the defendant to secure a promissory note made, executed and delivered by it to plaintiff in the sum of $25,000. Facts showing the necessity of appointment of a receiver to take possession of the mortgaged premises and property were alleged. Defendant answered, denying generally the material allegations of the complaint. It was alleged that the note sued on was procured by plaintiff by means of false and fraudulent statements and representations, fraudulent concealment of facts and without proper corporate action. Like allegations were made with respect to the mortgage. It was also alleged that both note and mortgage are invalid and without consideration, and that the mortgage is therefore void. The necessity of appointing a receiver was denied.

The affirmative allegations of plaintiff's answer were denied in the reply.

The trial court found in favor of plaintiff to the extent of seventeen thousand nine hundred and one dollars and forty-three cents, and a decree of foreclosure was entered accordingly. The appeal, which was taken by defendant, is from this decree and from an order denying its motion for a new trial. The parties will henceforth be referred to respectively as appellant, or the corporation, and respondent.

The following salient facts appear in evidence: Appellant, a mining corporation, on or about August 1933, secured from one Hanson, a lease and option to purchase the mining claims situate in Mineral County, Nevada, described in the mortgage involved. By the terms of the lease and option the purchase price was to be $15,000, payable in installments, with final payment of $14,000 to become due the last of July 1934. Hanson was to pay $1,500 of the purchase price to O. J. Belleville, one of the directors of the appellant corporation as a ten percent commission for consummating the deal, and $3,000 thereof to one Howell, for certain maps and data pertaining thereto. After securing the lease and

option the corporation entered into possession of the mining property and began operation of the same.

In January 1934 appellant sold to respondent and received payment therefor in cash, stock in the corporation to the amount of $5,000. Shortly thereafter appellant commenced to borrow money from him for the purposes of the corporation in connection with said mining property. Beginning in March 1934 and extending to and including August 31 of that year, respondent had at various times advanced sums of money to appellant for such purposes, amounting to $6,221.55.

A stockholders meeting was held in April 1934 at which respondent was elected a director of the corporation. The remaining directors elected at that time were O. J. Belleville, P. B. Beamer, Edwin E. Sprague, Elmer E. Sprague, H. W. Lang, Dr. Barnard, Harry Kankamp and M. E. Bohannan, who thereafter, with respondent, constituted the board. A directors meeting was held at that time at which respondent was elected president of the corporation. Elmer Sprague was elected secretary and H. W. Lang treasurer at this meeting.

Respondent advanced $2,000 to the company at that time, and in June following advanced $2,000 more. Soon thereafter the company was again in financial difficulties, and the time to make final payment to Hanson on the lease and option was nearing. Hanson extended the time to the last of August. In the latter part of that month the company was considerably in debt. It had no money to meet its obligations or to make the final payment on the lease and option. In this exigency, Elmer Sprague, on August 20, wired respondent at Fort Wayne, Indiana, where the latter lived, for financial help, and was told by a return wire on August 22, that respondent could furnish no more capital. On the same day Sprague sent him another pressing wire of the same import. Being unable to secure any money from respondent, Sprague went to Fort Wayne and induced him to come to Nevada to pay off Hanson. While in Indiana Sprague also conferred with directors

Kankamp and Dr. Barnard, concerning the matter. They understood that final payment was soon to become due; that a meeting of the directors was to be held in Mina about August 28, and it was expected to get the money from respondent to make the payment. Sprague informed them that their presence would not be necessary to form a quorum. Respondent and Elmer Sprague flew to Salt Lake City, where they met director Edwin E. Sprague, and discussed with him the proposition of respondent putting up the money to make final payment. From Salt Lake City respondent and Elmer Sprague went to Mina, in Mineral County, and thence to the mining property on August 31. With the exception of Kankamp, Dr. Barnard and Edwin E. Sprague, the remaining directors were in Mina and went with respondent and Elmer Sprague to the mining property. On their return to Mina on the evening of the 31st of August a meeting of the directors was held at the Baker Hotel, at which it was agreed that if respondent would advance the money to make final payment to Hanson, and also money to the corporation to meet unpaid bills, taxes due, water rent due, and an additional accrued pay roll, the corporation would execute and deliver to him the note and mortgage in question. This was done and respondent gave Hanson a check for $9,558, in payment of the balance of the purchase price, and gave the corporation his check for $2,720.45, for obligations of the corporation then due. The total of all the sums advanced by respondent to the corporation and in its behalf, was $18,500. To this was included in the note and mortgage the said sum of $5,000 paid by him to the corporation, and the sum of $1,500 for additional expenses of the corporation, making in all the sum of $25,000. Respondent testified that he had paid said additional expenses in the amount of $1,500. A resolution was adopted at the meeting authorizing the secretary and treasurer to execute the note and mortgage. Respondent testified that O. J. Belleville was present at the meeting, but the latter testified that he was not present, and the lower court

accepted his testimony. The bylaws of the corporation provide that a majority of the directors plus one, shall constitute a quorum. So a quorum of the directors was not present at the special meeting at which the note and mortgage were given to respondent. No written notice of the special meeting was given to the directors, as provided by the bylaws.

The court found, among other findings, as follows:

"That at a meeting of the five directors of the defendant corporation held in Mina, Nevada, August 31, 1934, the said secretary and treasurer of defendant were purportedly authorized and directed to execute and deliver said mortgage; that no written notice was given to the remaining directors of the defendant corporation of the said meeting prior to the holding thereof, but that all of the remaining directors of said defendant corporation had knowledge that said meeting was to be held and the general purpose thereof; that the directors in attendance at said meeting, including the plaintiff, constituted a majority of all the directors of said defendant corporation, but that said directors constituted one less than a quorum (a majority plus one) provided for by the by-laws of the defendant; that the consideration of the said promissory note and mortgage consisted of moneys advanced by plaintiff to defendant corporation in the sum of $17,901.43, including taxes hereinafter mentioned; that a portion of the moneys so advanced were advanced simultaneously with the said signing and purported execution and delivery of said note and mortgage and to supply the purchase price of the mining claims described in said mortgage, and were advanced by plaintiff upon the purported condition, as adopted by said meeting of directors, that such moneys and any moneys theretofore or thereafter advanced by plaintiff to defendant corporation should be secured by said note and mortgage; that defendant corporation accepted said advancements in the sum of $17,901.43 so made by plaintiff, and said moneys were used by defendant corporation for its corporate purposes; that all of the

directors, officers and stockholders of the defendant corporation for a long time past, have been upon notice or have had knowledge of the advancement and acceptance of the said aggregate sum of $17,901.43, and of the use of the same as aforesaid, and of the execution and delivery of the said note and mortgage, and have by their acquiescence and the said corporation has by its acquiescence, ratified the same as the debt and mortgage of the corporation to the extent of $17,901.43, and is estopped to deny the same.

"That the defendant has failed to pay taxes upon the property described in the mortgage for the years 1934 and 1935, which said taxes were a lien and charge upon the property described in said mortgage; that plaintiff herein has paid said taxes in the sum of $648.07.

"That no fraud was practiced by plaintiff in any of the transactions involved in this court."

These findings are supported by substantial evidence, except possibly, as to all of the directors having knowledge that the special meeting was to be held. Edwin E. Sprague swears he knew nothing of the meeting until some time after. Belleville testified he did not know that the meeting was to be held. However, it appears he was not averse to respondent having security for the money he advanced, or was to advance. He testified that he went with respondent and the other directors to the mining property on the 31st of August, and while there respondent said to him, "What is the matter with the property, why doesn't it pay?" "I told him that the property was all right, it was the management. And he said that he had $8,700 in the property, and I told him it was worth fifty thousand dollars of any man's money, but that I would not put it up unless I had control or security."

The record justified the finding as to the absence of fraud on the part of respondent. We will not attempt to answer all of the contentions of respondent in this respect, a few general comments will suffice. Of all of the directors, respondent, so far as the record shows,

was the only one who put up any real money to obtain title to the property involved and to try to put it on a producing basis. He was liberal in this respect, and his liberality held good for some time. Naturally he wanted security for his outlay and Belleville thought he should have it. When he got it we find Belleville on hand wanting to know what was to be done about his commission. That he was not present at the meeting does not appear to be through any connivance of respondent. Respondent testified that he was there and probably thought he was. Having told respondent that he would not put up money unless he had control or security, respondent would naturally want him present to vote like he talked.

■ The obtaining of the note and mortgage by respondent is no evidence of fraud. He did not vote on the motion. After the execution of the note and mortgage he continued to put up money for corporate purposes. Thereafter he made several unsuccessful attempts to make a deal for the sale of the property, and was finally forced to commence suit to reimburse himself.

■ One of the incidents that appellant dwells upon as indicating fraud, is that after this action was instituted respondent entered into a deal with one Mooney to sell to him his mortgage and stock for $26,000, and by which Mooney was to be given a lease on the mining property, and in which he paid to respondent's account $3,500, which was designated advance royalty, and which was to apply as a payment by Mooney to respondent for his mortgage and stock. We see nothing fraudulent in this transaction. It was fully explained by respondent. Moreover, it was a transaction accruing some time after the execution of the note and mortgage, and was wholly immaterial. The same is true as to other negotiations respondent had for the sale of the property during several years after the execution of the note and mortgage.

The trial court disallowed a substantial part of

respondent's claim included in the mortgage. No allowance was made for the sum of $5,000 paid by respondent for his stock in the company, or for the sum of $1,500 additional expense or for sundry other advancements, reducing the claim, as heretofore stated, from $25,000 to $17,901.43. It was found that the latter amount represented payments accepted by the corporation for its corporate purposes.

■■■ The question is presented whether, under the facts of the case, the judgment was warranted, on the ground of ratification by acquiescence, or estoppel, for it must be conceded that notice of the special meeting was not given to all of the directors, nor was there a quorum present when the note and mortgage were executed. As heretofore pointed out, the bylaws required that a written notice of any special meeting must be given, and that a majority plus one should constitute a quorum. Consequently a legal meeting was not held for want of proper notice. Defanti v. Allen Clark Co., 45 Nev. 120, 198 P. 549; Clark Realty Co. v. Douglas, 46 Nev. 378, 212 P. 466. Aside from that, legal action was not and could not have been taken for lack of a quorum. Appellant's contention in these respects must be allowed. But generally speaking, it is a well-settled rule of law that one cannot accept the benefits derived from a transaction and repudiate any burden connected with it. To state the rule more specifically in its application to the facts of this case, a corporation cannot avail itself of the benefits of moneys loaned to it for its corporate purposes, and disavow a mortgage given without authority by its agents to secure the loan.

The rule is analogous to that which governs in a case where a party avails himself of the benefits flowing from a part of an instrument and would repudiate the part carrying a burden.

■ In Alexander v. Winters, 23 Nev. 475, 49 P. 116; Id., 24 Nev. 143, 50 P. 798, it was held that this could not be done, the court saying: "It is well settled that a person shall not be allowed at once to benefit by and

repudiate an instrument, but, if he chooses to take the benefit which it confers, he shall likewise take the obligations or bear the onus which it imposes." 24 Nev. 143, 146, 50 P. 798, 799. The principle rests upon the equitable ground that no man can be permitted to claim inconsistent rights in regard to the same subject. 2 Herman on Estoppel, and Res Adjudicata, section 1028.

■ The generally accepted rule is thus stated in 2 Fletcher Cyclopedia Corporations, at page 826, and following: "Unless the rights of the public are involved or unless the contract is in violation of some positive law or well-settled rule of public policy, as a general rule, if a corporation, with knowledge of the facts, accepts or retains the benefit of an unauthorized contract or other transaction by its officers or agents, as where it receives and uses or retains money or property paid by the other party, or accepts the benefits of services, etc., it thereby ratified the contract or other transaction, or will be estopped to deny ratification." The authority goes on to say: "This rule is based upon the doctrine of ratification in toto, under which a principle must either ratify the whole transaction or repudiate the whole. He cannot separate the transaction and ratify the part that is beneficial to him, repudiating the remainder; but if he, of his own election and with full knowledge, accepts and retains the benefits of an unauthorized transaction, he must also accept the part that is not beneficial, and will be held to have ratified the whole. In some states this rule is adopted by statute."

■ We have no such statute in this state, but in view of the decisions heretofore rendered by this court, the question as to the applicability of the rule to the facts of this case is not an open one in our jurisdiction.

The rule was applied in Defanti v. Allen Clark Co., 45 Nev. 120, 198 P. 549. In that case the mortgage was made by two of the trustees of the corporation, which received the benefit of the loan thus secured. The third remaining trustee, Allen Clark, received no notice of

the meeting and contended that he had no knowledge of the transaction until a few days before the institution of the suit for foreclosure.

The court held the giving of the mortgage was an invalid act, but as the corporation had received the money derived from the mortgage loan, the decree of foreclosure should be affirmed. Appellant contends that the facts in Defanti v. Allen Clark Co., supra, are so dissimilar to those of the instant case that it is not an authority in point. We think it is controlling. In some respects the facts in the cases are strikingly similar, and in others not so variant as to invoke a different rule. In each there was an invalid act of executing a mortgage on the corporate property at a meeting of which proper notice had not been given to all of the directors. In each the money represented by the mortgage was of the utmost benefit to the corporation, in fact of life-saving quality in both cases. In the instant case the moneys advanced by respondent were substantially the only resource of the corporation for its corporate purposes, and saved the loss of title to almost all of its mining property. If respondent had not put up $9,558 on the 31st of August 1934, the last day of the extension of time to make final payment on the option, the corporation would have been wrecked. In addition he, at the same time, put up $2,720.45, and subsequently large sums were advanced by him in good faith, which were disallowed. All of this, in addition to the large sums he had advanced for the benefit of the corporation prior to said 31st of August.

In the Defanti v. Allen Clark Co. case a similar portending disaster was averted by the mortgage loan, as indicated in the opinion. The court said: "The loan was personally negotiated by Emily Clark, wife of Allen L. Clark, to protect the property of the corporation from being sacrificed, as well as to pay other existing obligations."

But appellant contends that essential elements are lacking in the instant case that were present in Defanti

v. Allen Clark Co., supra, namely, knowledge on the part of the corporation through knowledge of all of its directors, of the giving of the mortgage and the reception of the benefits derived from the loan secured, and acquiescence therein. A number of cases are presented by him in support of his position that such are essential elements to show ratification by acquiescence or estoppel. But we think all are present in the instant case. As previously shown, the court found them to be present.

Direct evidence, and evidence from which such knowledge is fairly inferable, supports such finding. To analyze it and show its probative force in this regard, would serve no useful purpose and impress this opinion with the vice of inexcusable prolixity. See Clark Realty Co. v. Douglas, 46 Nev. 378, 212 P. 466, for a recognition of the rule we approve herein.

■ Appellant contends that the respondent being an officer of the corporation takes the case out of the rule we have approved, and invalidates the transaction. This is not so. Such fact only subjects the evidence to a close scrutiny as to the good faith of the officer of a corporation who loans money to it and takes security therefor. That such a transaction is valid if fairly entered into, is settled law. Hough v. Reserve Gold Mining Company, 55 Nev. 375, 35 P. (2d) 742; Foster v. Belcher's Sugar Refining Co., 118 Mo. 238, 24 S. W. 63; Terhune v. Weise, 132 Wash. 208, 231 P. 954, 38 A. L. R. 94; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328. In Hough v. Reserve Gold Mining Company, supra, we held that a corporation could enter into a valid contract to purchase property from one of its officers. We said: "In such a case the better view, sustained by the weight of authority, is that a contract between a corporation and an officer thereof 'is not void per se, nor is it voidable, except for unfairness or fraud for which it will be closely scrutinized in equity.' "

In Twin-Lick Oil Co. v. Marbury, supra, the court said: "While it is true that the defendant, as a director

of the corporation, was bound by all those rules of conscientious fairness which courts of equity have imposed as the guides for dealing in such cases, it cannot be maintained that any rule forbids one director among several from loaning money to the corporation when the money is needed, and the transaction is open, and otherwise free from blame.".

The court in Terhune v. Weise, supra, held valid an agreement between a failing corporation and one of its officers, whereby in return for advancements to the corporation to enable it to continue business, the officer was given assignment of contracts, as the agreement was made in good faith and could not be questioned as a preference.

In Foster v. Belcher's Sugar Refining Co., supra, the directors of the corporation were commended by the court for loaning money to it for legitimate purposes of the corporation, and held it a valid claim against the corporation.

The evidence in the instant case points clearly to the good faith of respondent and the directors who sought to authorize the note and mortgage.

■■■ On the question of ratification and estoppel the court ordered respondent to amend his reply to conform to the proofs submitted, which was accordingly done. The order was made by the court on the settlement of the findings when appellant objected to the findings relating to ratification and estoppel. Respondent asserts that the amendment was probably unnecessary and was ordered by the court out of an abundance of caution.

He cites Zenos v. Britten-Cook Land & Livestock Co., 75 Cal. App. 299, 242 P. 914, to sustain his theory, and refers to the Defanti case in which this court decided the same on the theory of estoppel, on the pleadings made in the lower court without there having ever been any amendments to the pleadings. Be that as it may, there was no error in the order. The case was tried on the theory that ratification and estoppel were in issue,

and considerable evidence directed thereto was introduced. Appellant therefore could not have been misled by the fact that the amendment was not made during the trial of the case.

Error is predicated upon the refusal of the court to allow as a credit to the corporations the sum of $3,500 designated as advance royalty paid by Mooney to respondent. The refusal of the court to allow it was based on the theory that if it was allowable in any event it should have been made the subject of a set-off on counterclaim, and in the absence of such a pleading there was no issue made therein. There was no error in this ruling. If, as claimed by appellant, knowledge thereof was gained subsequent to the filing of its answer in the suit, a supplemental answer setting up the claim was in order. Moreover, as heretofore pointed out, the deal in which the $3,500 was involved was entered into after the commencement of the suit and was made as a part payment to respondent for his mortgage and stock. This transaction was to be completed after respondent received a deed for the mining property. It is difficult to see how the corporation had any interest in the payment.

The motion for a new trial was properly overruled. The motion was supported by the affidavit of the attorney of appellant on the ground of newly discovered evidence. Assuming, without deciding, that the newly discovered evidence claimed is material and not cumulative, due diligence to procure it at the trial is not shown. Such diligence must appear before a new trial would be warranted on the ground of newly discovered evidence. Howard v. Winters, 3 Nev. 539; Pinschower v. Hanks, 18 Nev. 99, 1 P. 454; State v. Cook, 13 Idaho 45, 88 P. 240.

We have examined all the other errors claimed and have discovered none.

The decree and order denying the motion for a new trial should be affirmed, and it is so ordered.