[No. 13525.   Department One.   February 10, 1917.]

JAMES COLLINS LLOYD et al., *Appellants*, v. LOUIS P. SICHLER, *Trustee, et al., Respondents*, HAVEN IRRIGATION & LAND COMPANY, *Intervener*.[1]

CORPORATIONS—INSOLVENCY—PREFERENCES—CHANGE IN SECURITIES —TRUST FUND DOCTRINE. Where a creditor of insolvent corporations had a first and prior lien against their real estate for work and labor performed in the construction of a drainage ditch, and dismissed his action for foreclosure of the lien in consideration of a mortgage upon the property, equity, regarding the substance rather than the form, will not hold the mortgage an unlawful preference by an insolvent corporation over other unsecured creditors; since the mortgage did not modify or change the relation of the parties to the disadvantage of creditors, and the trust fund doctrine does not apply.

Appeal from a judgment of the superior court for Grant county, Steiner, J., entered October 29, 1915, upon findings in favor of the defendants, in an action for equitable relief, tried to the court. Affirmed.

*Henry J. Snively, James Collins Lloyd,* and *Charles F. Riddell,* for appellants.

*McClure & McClure* (*Walter S. Osborn,* of counsel), for respondent Fox.

*Joseph R. Anderson,* for intervener.

CHADWICK, J.—On April 29, 1911, appellants Koppen sold certain lands to the Washington Orchard Irrigation and Fruit Company, which had theretofore acquired all the capital stock of an original corporation known as the Columbia River Orchard Company. Both corporations were organized by the same men. They were conceived and conducted in fraud. The managers brought into existence another corporation, called the Oregon & Washington Trust Company, for the purpose of certifying the bonds which the first named

[1]Reported in 162 Pac. 979.

corporations intended to issue in the pursuit of their schemes to acquire lands and water rights and to develop an irrigation system at the expense of those with whom they hoped to deal.

Appellants Koppen were induced to take the joint bonds of the said companies to the face value of $16,000 in payment for their lands. The appellants did not discover the fraudulent purposes of the companies until in January, 1912, in which month they were adjudged to be bankrupt by the United States district court sitting in Seattle, Washington. They thereafter brought this suit, claiming to be defrauded vendors, and asking that their deed be set aside and held for naught. In the meantime the companies had contracted with respondent J. H. Fox for the construction of ditches, canals, laterals, and other material parts of the irrigation system which they had planned. Fox performed labor to the value of more than $50,000, of which $38,470 was unpaid. Being unable to collect the amount due him, he filed a lien upon the property of the companies, including the property conveyed by appellants Koppen to them, and thereafter began an action to foreclose his lien and to satisfy his demands by sale of the property. He alleged the insolvency of the companies, and asked for the appointment of a receiver. In consideration of the dismissal of his action, and an extension of time, the companies paid $5,500 in cash and gave three several notes for $8,000, due September 1st, October 1st, and November 1st, 1911, respectively, and a note for $8,948.86, due December 15, 1911. Payments were made as follows: September 11, 1911, $500; November 30, 1911, $500; and January 4th, 1912, $2,000. The notes were secured by a mortgage upon the lands sold by appellants, and other lands.

The court found that the extension of the time of payment of the balance due upon his lien claim, as evidenced by the notes and mortgage hereinbefore described, was a sufficient and valuable consideration for the dismissal by respondent Fox of his suit brought for the foreclosure of his lien and for the appointment of a receiver for the debtor companies.

This, and the conclusion of law drawn from it, is assigned as error, the gist of appellants' contention being that the mortgage given to respondent J. H. Fox was made when the corporations were hopelessly insolvent, and to hinder, delay, and defraud the creditors of the corporations, including appellants, and to give to respondent Fox an unlawful preference over the other creditors of the corporations, including appellants.

Pending the trial, and after the answer of Fox had been served, appellants amended their complaint, claiming to be creditors of at least equal standing with Fox, and claiming that Fox had been given an unlawful preference.

The case is presented from several angles. Many questions are raised. Authorities are cited and freely discussed. But we think it unnecessary to follow the discursive arguments of counsel beyond one question, resting in the maxim: "Equity regards substance rather than form." "Equity will in no case permit the veil of form to hide the true effect or intent of the transaction." Fetter, Equity, p. 23.

The validity of the lien filed by Fox is not attacked in any way, nor is it claimed that, if he had pursued his remedy, his lien would not have been first in right as it was in time. The controlling question is, therefore, whether a court of equity—which will not, in the absence of a statute, suffer a wrong to be without a remedy—will deny him his advantage because he changed the form of his lien from that of a statutory lien for work and labor done and materials furnished, into a mortgage to secure notes given to cover the amount of his demand.

Appellants are put in no worse position. They have all the rights they would have had had the foreclosure proceeding been carried on to final judgment and sale. This is not a case where a debtor gives a preference to one creditor of equal standing with others, or a preference without countervailing advantage to the debtor or to the debtor's estate.

We do not feel called upon to discuss that phase of the law. It is no more than a voluntary agreement—between a creditor having a lawful advantage over other creditors, and the debtor—to extend the time and manner of payment of his debt. The theory upon which preferences are denounced is that, by the preference of one, another is denied the equality of advantage which the law guarantees to all.

The several National Bankruptcy acts state the law governing illegal and fraudulent preferences, and we may safely refer to the cases arising under these acts for authority to sustain our view that a mere change in the form of an existing security will not operate to the loss of a creditor.

"The conveyance of property to a creditor who has a valid lien on such property to a greater amount than the value of it is not a preferential sale." Loveland, Bankruptcy (4th ed.), § 531.

See, also, Brandenburg, Bankruptcy (2d ed.), § 30.

In *Catlin v. Hoffman*, Fed. Cas. No. 2,521, the one who was subsequently adjudged to be a bankrupt had purchased certain property and given a mortgage on the premises to secure the remainder. The mortgage was foreclosed and a decree entered against the mortgagor, the bankrupt. He afterwards gave a mortgage to secure the amount of the judgment, and another judgment taken upon an unsecured claim. The court sustained the mortgage to the extent of the original mortgage lien and the decree entered upon the foreclosure of it, saying:

"No case directly in point was cited on the argument, but I do not think that a conveyance by an insolvent debtor to his creditor of property, upon which said creditor already has a lien to a greater amount than the value thereof, is within the purview of the first clause of section 35 of the bankrupt act, and therefore void. . . .

"No preference is given by such a conveyance, and no other creditor is deferred or injured thereby. Unless some creditor is deferred or defrauded by such conveyance, no one can be preferred by it."

In *Coxe v. Hale,* Fed. Cas. No. 3,310, Hale held valid mortgages on the land of "E." "E" conveyed the land to Hale by deed. Upon suit brought by the assignee of "E," who was adjudged to be a bankrupt after the making of the deed, the court held that the taking of a deed was not a preference; that it lacked the element of intent, and further:

"There is no evidence, nor is there any claim, that that mortgage debt was not due in good faith, free from any impeachment, under the bankrupt law or otherwise, or that the mortgage lien was not perfect for the amount due. The deed, therefore, gave to Hale (the father-in-law), no preference. It could give none. He was entitled, by virtue of his lien, to the whole property already. . . .

"A foreclosure would have involved expense, necessarily reducing the net sum which could be realized on the mortgage-debt. So that, in fact, the conveyance, without foreclosure, operating to release the equity of redemption, so far from resulting in a preference to Hale over other creditors, had the effect of reducing the mortgage-debt to a greater extent than was otherwise possible, and, in that way, tended to the benefit of Eastman and his creditors."

So it is in this case. Fox had no preference by the mortgage. The relations and rights of the parties were not, in any way, changed or modified, unless it was to the advantage of appellants.

The substance of this case is the debt. The form is the security. The lien of Fox was not vulnerable to the attack of creditors, and it can avail them nothing that the form of his security was changed, so long as the substance remains.

This conclusion makes it unnecessary for us to discuss the many questions raised by counsel, or the contentions of the interveners. It is certain that the trust fund doctrine, which is most strenuously urged, cannot apply, for Fox's lien might have been asserted whether the company was solvent or insolvent at the time it was filed. It is made a preferred lien under the statute.

The judgment of the lower court is affirmed.

ELLIS, C. J., MAIN, MORRIS, and WEBSTER, JJ., concur.