[No. 18668.   Department Two.   January 5, 1925.]

ROBERT S. TERHUNE, *Receiver for Commercial Plumbing & Heating Company, Respondent,* v.
H. F. WEISE, *Appellant.*[1]

CORPORATIONS (208)— INSOLVENCY — PREFERENCES — CONTRACT FOR ADVANCES—TRUST FUND DOCTRINE. A contract to make advances to a corporation to be formed for the purpose of enabling it to carry on its business, upon the security of the company's lien rights, and assignments of 60% of its accounts receivable, is not fraudulent as to creditors as violating the trust fund doctrine as to the assets of an insolvent corporation.

SAME (205, 211)—INSOLVENCY—OFFICERS—PREFERENCES—CONTRACT FOR ADVANCES. Such a contract is not void in that it provided that the party making the advances was to be made secretary and treasurer of the corporation when formed, and thereafter stood in a fiduciary relation to the company, where the transaction was in good faith and the company subsequently thereto became insolvent.

SAME (210, 211)—INSOLVENCY—PREFERENCE TO OFFICERS—CONTRACT FOR ADVANCES—EQUITABLE LIEN. A contract to make advances to a corporation to be formed for the purpose of enabling it to carry on its business, upon the security of the company's lien rights, and assignments of 60% of its accounts receivable, is not void as against public policy, being valid in its inception, and void only because its purpose did not succeed.

Appeal from a judgment of the superior court for King county, Smith, J., entered November 3, 1923, upon findings in favor of the plaintiff, in an action by a receiver to recover assets of an insolvent corporation, tried to the court. Reversed.

*Kerr, McCord & Ivey,* for appellant.

· *Cosgrove & Terhune,* for respondent.

MACKINTOSH, J.—H. B. Vaughn was doing business under the name of the Commercial Plumbing & Heating Company, in 1922, and being in need of additional funds with which to carry on his business, made an

[1]Reported in 231 Pac. 954.

arrangement with the appellant to advance money to him. This agreement was reduced to writing and provided that the appellant should furnish $1,000, or such additional sums as might be desired to be used by Vaughn for the purpose of obtaining materials and supplies and paying for labor upon his plumbing and heating contracts; that, for the use of such money, Weise was to receive, in lieu of interest, the cash discounts obtained upon materials and supplies purchased. To secure the repayment of the advances, Weise was to have all lien rights for materials or labor which Vaughn might acquire under his contracts, and as further security to be given by assignment 60% of the accounts receivable and other rights in contracts entered into by Vaughn "upon which material, supplies and labor which have been paid for or agreed to be paid for by the said second party (Weise) are used, and the party of the first part (Vaughn) further agrees to execute such further assignment or assignments as may be necessary or proper for carrying out the foregoing provisions in particular cases." The agreement then provides that Weise should make the collections on the contract and retain from the amount collected a sum sufficient to reimburse him for material and labor for which he had paid up to an amount not in excess of 60% of the contract price, and if in any case the 60% should not be sufficient to reimburse him, then he should have a right to deduct from future collections such amounts in addition as might be necessary to reimburse him for the deficiencies. The agreement then states that it is contemplated by the parties that a corporation might be formed to take over Vaughn's business, and in that event Vaughn agreed to assign the contract to the corporation and cause the corporation to assume his obligations thereunder, and that Weise should become secretary and treasurer of the

corporation. Thereafter the Commercial Plumbing & Heating Company was incorporated and assumed the contract and subsequently went into the hands of the respondent as receiver.

The case is here without a statement of facts and solely upon the findings of fact, conclusions of law and judgment. The findings, after setting forth the agreement which has been outlined, proceeds to state that, at the time the corporation accepted the Vaughn-Weise contract, it was without funds to conduct its business, and its assets were of very little value; that, pursuant to the agreement, Weise furnished to the corporation at different times $6,000, which sum was used by the company for the purchase of materials and the payment of labor upon various plumbing and heating contracts of the company; that, under the terms of the contract, Weise received, from one to two months after he had advanced the funds, assignments of contracts upon which he collected and retained payments to apply upon his advances; that Weise acted as secretary and treasurer of the company, and that the company was insolvent and unable to pay its debts in the usual course of business, and this fact was known to Weise, and, at the time the assignments were actually made, the company was insolvent and known to be such by Weise; that Weise received in assignments and collections made thereunder sufficient to reduce the company's indebtedness to him to the sum of $3,027. The court concluded from these facts that the contract was void and entered judgment against Weise for the recovery of the amount which he had received under the assignments.

It is urged in support of the judgment that the contract between the company and the appellant was illegal as being in fraud of creditors, that it violated the trust fund theory, that it was against public policy,

and that it tended to constitute a breach of duty on the part of an officer of a corporation. These contentions are all disputed by the appellant.

This court, early in its existence, firmly declared its allegiance to the trust fund theory; that is, that the assets of an insolvent corporation are a trust fund for the benefit of all of its creditors, and that no creditor can secure a preference over others. *Thompson v. Huron Lumber Co.*, 4 Wash. 600, 30 Pac. 741, 31 Pac. 25; *Conover v. Hull*, 10 Wash. 673, 39 Pac. 166, 45 Am. St. 810. No court has been more consistent in adhering to that doctrine and none has gone farther in applying it. But we feel that the limit of its extension has been reached and to further widen its scope is to impair the doctrine itself and to unjustly hamper the operation of a corporation which, in good faith, may be attempting to weather a financial storm, or struggling corporations attempting to start upon their commercial voyages. It would be unwise to apply the doctrine so rigorously that such corporations could not obtain financial relief by giving security to those who might be willing to extend help if they could be protected. It is common knowledge that many a struggling concern could be placed upon a sound financial foundation if it might, in exchange for the needed help, use its assets without the danger that, if the attempt prove unsuccessful, those assets would be taken back from the person extending the relief and he be compelled to share with the general creditors in what might be distributed under a receivership. This court has never said, and is now unwilling to say, that where a *bona fide* transaction is entered into between an insolvent corporation and a person willing to exchange for the company's assets the needed financial assistance, that such agreements are illegal or void for the reason that they constitute a preference. To hold otherwise would

compel the repayment of all sums paid by an insolvent corporation in exchange for any labor or material. The basis upon which the trust fund doctrine rests is that one creditor during insolvency has caused a depletion of the assets of the insolvent concern to the detriment of the other creditors. Where there has been no depletion the basis of the doctrine has been removed, and therefore, where a present valuable consideration passes to the insolvent corporation from the creditor, the amount paid by, or secured from, the insolvent to such creditor cannot constitute a preference.

The supreme court of the United States, in *Fogg v. Blair,* 133 U. S. 534, discussing the trust fund doctrine, said:

"That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it cannot be sold, transferred, or mortgaged to *bona fide* purchasers for a valuable consideration, except subject to the liability of being appropriated to pay that indebtedness. Such a doctrine has no existence."

In *Breed v. Glasgow Inv. Co.,* 71 Fed. 903, a corporation while insolvent conveyed land in exchange for money advances, and upon a receiver being appointed, a general creditor claimed that the deed to secure the loan should be decreed to inure to the benefit of all the creditors. The court held that the deed was valid, since it was given to secure a debt contracted at the time, and that there was no equitable principle compelling the security created for the money advanced to be distributed for the benefit of all the creditors, the court saying:

"The object of the Virginia statute [which is but a statutory enactment of the trust fund doctrine] on which this proceeding is based is to prevent a private

corporation from giving a preference to one or more creditors by incumbering its property in their favor, where all of the creditors stand upon the same footing, —where all are equally entitled to share in the assets of the corporation for the payment of their debts. . . . But grant that it was an insolvent corporation when said deed of trust was given; the doctrine, as applied by the courts to insolvent corporations, has never been carried so far as to allow a court of equity to invade a security taken by a vendor to secure the purchase money for the property sold, and to subject this property, or its proceeds, to a ratable distribution among all the creditors of an insolvent corporation. The court is at a loss to see why it should do so. Selling the property to the corporation, and reserving a lien on the property to secure the purchase money, is not an act that in itself works detriment to the general creditors of the corporation. It is because of the injury done to the other creditors that a corporation is forbidden to prefer one general creditor to another. It is very plain that this reason does not apply in case of a vendor selling property, and the corporation creating a lien on such property to secure the payment of the purchase money.''

To the same effect see 14-A C. J. 908. This court, in *Lloyd v. Sichler*, 94 Wash. 611, 162 Pac. 979, recognized the right of a creditor, whose transaction with the company did not modify or change the relation of the parties to the disadvantage of other creditors, to make such an arrangement. In such cases, the trust fund is in no way depleted, the assets of the company are not lessened but are merely changed in character; and, in the instant case, in place of accounts collectible under a contract, the company received cash for which it was able to pay for the labor of its workmen and persons who had furnished materials and supplies. As a matter of fact, by the contract the assets of the company were preserved in a great deal better condition than they would otherwise have been.

The next contention is that the contract is void be-
cause the appellant stood in a fiduciary position to the
company, and the general rule is stated that directors
and officers of a corporation cannot enter into contracts
with a corporation which tend to place them under an
inducement to disregard their duty and to take a posi-
tion affecting the actions of the corporation which will
be for their interest and against that of the stockhold-
ers and creditors. The rule, as applicable to the facts
here, is stated in 14-A C. J. 908, as follows:

"A failing corporation may give security to an of-
ficer or director for present advances made in good
faith and honestly to assist in its business, but con-
veyances of this character are subject to severe scru-
tiny by the courts."

The circuit court of appeals, for the ninth circuit, in
*In re Lake Chelan Land Co.*, 257 Fed. 497, in a case
arising in this state, held that there was no authority
in this state for holding that a mortgage given by an
insolvent corporation for a present advance is not
valid, and decided that:

"An insolvent corporation, in need of funds and
ready cash, may borrow the amount needed from a
director or other officer of the corporation, and secure
it by a lien on its property or transfer of its assets."
[Syllabus.]

And that such a transaction, being in good faith, the
corporation subsequently going into bankruptcy, it
could not be questioned on the ground that it was a
preference and had been entered into between the cor-
poration and one of its officers.

The supreme court of the United States, in *Twin-
Lick Oil Co. v. Marbury*, 91 U. S. 587, held, as stated
in the syllabus of that case, that:

"A director of a corporation is not prohibited from
lending it moneys when they are needed for its benefit,

and the transaction is open, and otherwise free from blame; nor is his subsequent purchase of its property at a fair public sale by a trustee, under a deed of trust executed to secure the payment of them, invalid."

In the course of the opinion the following is said:

"So, when the lendor is a director, charged, with others, with the control and management of the affairs of the corporation, representing in this regard the aggregated interest of all the stockholders, his obligation, if he becomes a party to a contract with the company, to candor and fair dealing, is increased in the precise degree that his representative character has given him power and control derived from the confidence reposed in him by the stockholders who appointed him their agent. If he should be a sole director, or one of a smaller number vested with certain powers, this obligation would be still stronger, and his acts subject to more severe scrutiny, and their validity determined by more rigid principles of morality, and freedom from motives of selfishness. All this falls far short, however, of holding that no such contract can be made which will be valid; and we entertain no doubt that the defendant in this case could make a loan of money to the company."

The supreme court of Wyoming, in *Harle-Haas Drug Co. v. Rogers Drug Co.,* 19 Wyo. 35, 113 Pac. 791, said:

"It is contended that the mortgage was executed by an insolvent corporation to one of its directors, and was therefore void as to other creditors. The 'trust fund' doctrine is invoked in support of that contention. . . . The principle is well settled that 'a corporation acting in good faith and without any purpose of defrauding its creditors, but with the sole object of continuing a business which promises to be successful, may give a mortgage to directors who have lent their credit to it in order to induce a continuance of that credit, . . .'"

The next reason advanced for the illegality of this contract is that the security turned over to the appel-

lant was not delivered at the time of the advance, and that therefore the doctrine that an officer of an insolvent corporation may advance money for the benefit of the company to be used by it in paying its creditors and enable it thus to continue business, and may take security *at the time* for the reimbursement of such advances, provided such advances are made in good faith, does not apply, for the reason that the advances were made prior to the taking by him of the security. The answer to this is that the agreement must be looked to to determine what was the real situation. It was there provided that, for advances to be subsequently made by the appellant, he was to receive assignments of various contracts as they came into existence. By the very nature of the business they were not in existence at the time the agreement was made. The assignments were made under the terms of the contract as soon as money which could be assigned was due on those contracts. Since the parties intended to make specific security for the advances, even though the assignment or the transfer of the security was not made at the actual moment the money was lent to the company, yet equity will impress the property with the obligation created by the contract and compel the observance of the contract's terms. *Bach & Sons v. Smith-Pattison Mfg. Co.,* 21 Ohio Cir. Ct. 258. In *In re Farmers' Supply Co.,* 170 Fed. 502, the syllabus reads:

"Where a party by express agreement sufficiently indicates an intention to make specific property a security for a debt or other obligation and promises to transfer such property as security, equity impresses the property with an equitable lien in case security is not given."

Consequently, we have not here a case where the creditor is receiving security or being paid for an antecedent debt. The creation of the debt and the pay-

ment of it were by this agreement, in legal effect, contemporaneous acts.

Respondent also attacks the agreement as, and the trial court in its conclusions of law found it to be, "void as against public policy." It is difficult to understand exactly what is meant by this unless it merely means that the contract is void because of the reasons already stated, that is, that it was in violation of the trust fund doctrine, or was such a contract as an officer of a corporation could not enter into between himself and his corporation. The declaring of contracts void as against public policy is a dangerous thing. We find a contract here which is not made illegal by any statute, which was not made in restraint of trade, interferes with none of the functions of government, which is not immoral, but which merely provides for aid to a corporation seeking to escape financial difficulty. It is hard to see in what way such a contract contravenes any public policy. It cannot be such a contract, when its inception is valid, becomes invalid because the purpose for which it was entered into does not succeed. 6 R. C. L. 711 lays down the rule, and it is also stated in 13 C. J. 427 as:

"It is clearly to the interest of the public that persons should not be unnecessarily restricted in their freedom to make their own contracts; and therefore agreements are not to be held void as being contrary to public policy unless they are clearly contrary to what the legislature or judicial decision has declared to be the public policy or they manifestly tend to injure the public in some way."

In *Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co.*, 70 Fed. 201, the syllabus reads:

"The public policy of a state or nation must be determined by its constitution, laws, and judicial decisions; not by the varying opinions of laymen, lawyers, or judges as to what the interest of the public

demands. . . . A party who seeks to put a restraint upon the freedom of contract in any case must make it plainly and obviously clear that the contract in question is against public policy.''

In *Burne v. Lee,* 156 Cal. 230, 104 Pac. 438, the supreme court of California declares that:

''. . . if the agreement can be accomplished in any legal method, it must be assumed that that method was in contemplation of the parties when the contract was made, and will be pursued.''

It follows, therefore, that the contract here was valid and not subject to attack upon any grounds urged by the respondent and is binding. It provides nothing more than that a person, even if he is an officer of an insolvent corporation, may advance money for the benefit of that insolvent corporation to pay its debts and enable it to continue business, and that he may take for such advances security to reimburse him for them; provided, of course, that the whole transaction is entered into in good faith.

The action of the trial court in holding this contract illegal and void is reversed and the action dismissed.

MAIN, C. J., and TOLMAN, J., concur.

HOLCOMB, J. (concurring)—There is no necessity for the apparent animadversion upon the trust fund doctrine followed in this state in the majority opinion. We have been most consistent in applying the trust fund doctrine only to corporations which had become insolvent, in preventing preferences to its creditors.

An all sufficient reason for the result arrived at by the majority is that the agreement entered into in this case was entered into between two private individuals before any corporation was formed, or any corporation became insolvent. Advances made by appellant under his agreement with Vaughn were made for the purpose

of enabling the corporation to begin operations, and, as a matter of course, were nothing more nor less than actual working capital.

Therefore, while I cannot concur in much of the reasoning in the majority opinion, I concur in the result.

FULLERTON, J., concurs in the result.