[No. 24114. Department Two. January 7, 1933.]

L. Horchover, *as Trustee, Appellant,* v. Pacific Marine Supply Company, *Respondent.*[1]

*Leopold M. Stern,* for appellant.
*G. E. Steiner* and *J. N. Ivey,* for respondent.

Main, J.—This is an action by a trustee in bankruptcy to recover $4,788.86, alleged to be a voidable preference. The case is here, on appeal by plaintiff, on findings of fact and conclusions of law and a judgment thereon dismissing the action. A summary of the facts, made by the findings, follows.

The bankrupt, Straits Packing Company (hereinafter called the Packing Co.), was engaged in the business of packing salmon in Alaska. About March 8, 1930, it applied to respondent for credit in the amount

[1]Reported in 17 P. (2d) 915.

of five thousand dollars for supplies to be used in connection with its 1930 packing operations. The respondent declined to extend such credit or deliver any supplies without security for the purchase price. The manager of the Packing Co. then informed respondent that it had made arrangements with the Canadian Bank of Commerce for loans on its salmon pack of 1930, and that such loans would be available as soon as the pack reached Seattle and warehouse receipts therefor were in the possession of the bank. The manager of the Packing Co. further advised respondent that he would instruct the bank to pay respondent, on account of supplies furnished by it, from such loans the sum of seventy-five cents for every case of salmon pledged to the bank to secure such loans.

On or about March 8, the manager of respondent communicated orally with officers of the bank, and was informed by them that such credit had been arranged for by the Packing Co., and that the latter had directed the bank to pay respondent from such loans, when available, the sum of seventy-five cents for every case of salmon pledged to secure the loans. The officers of the bank told the manager of respondent that the bank would remit such sums directly to it as soon as loans to the Packing Co. were available. Thereafter, between April 8 and May 5, respondent furnished supplies to the Packing Co. to the amount of $4,788.86.

On May 5, the Packing Co. wrote the bank as follows:

"In addition to the above payments, we have made purchases from the Pacific Marine Supply Company under certain guaranties, which purchases will be in an amount approximating $5000. In the same manner as that of the American Can Company and concurrently therewith, we wish you to remit to the Pacific Marine Supply Company 75c per case until their account is paid in full, and you are to accept as correct

any statement of our indebtedness furnished by Pacific Marine Supply Company."

The bank then wrote the following letter to respondent:

"Pacific Marine Supply Company,      May 13, 1930
"Seattle, Washington.
"Dear Sirs:
   "At the request of the Straits Packing Company, we wish to advise that arrangements have been made whereby we are to pay the amount owing you by them at the rate of 75c per case as the salmon is received in Seattle and loans made against it by us.
   "For the completion of our records, will you please furnish us with an invoice showing the amount to be paid you.                    Yours truly,
                              "W. H. KENT,
                              "Pro-Manager."

On July 31, the bank, having received warehouse receipts for a shipment of salmon, paid respondent $2,063.25, in pursuance of these arrangements. And again, on August 10, after further credit to the Packing Co. was made available by another shipment of salmon, the bank paid respondent $2,725.61. The Packing Co. was adjudged bankrupt September 11, 1930. The appellant, as trustee, seeks to recover the above sums, alleging them to be voidable preferences under the bankruptcy act and the trust fund doctrine. It is conceded that the Packing Co. was insolvent at the time the payments were made.

There are two questions involved: First, was the credit arranged for with the bank subject to assignment; and second, did the conversations and acts of the officers of the Packing Co., bank and respondent consummate an assignment of a portion of such credit? We think that both these questions must be answered in the affirmative.

The supplies furnished and credit extended by respondent to the Packing Co. went to increase the assets of the latter. Without such supplies and credit, the fund from which respondent was paid would never have come into being. Respondent was merely reimbursed from a fund which it helped to create by making it possible for the Packing Co. to proceed with its 1930 operations. A fund, to be assignable, does not have to be actually existent; it is sufficient if it is potentially existent. 5 C. J. 854, 924. Here, the respondent was paid from a fund that was brought into potential existence by its own acts, in the furnishing of supplies and extension of credit to the Packing Co. for the 1930 operations.

In *Terhune v. Weise*, 132 Wash. 208, 231 Pac. 954, 38 A. L. R. 94, where assignments were made of contracts which would come into existence in consequence of advances to be made by defendant, the court said:

"The agreement must be looked to to determine what was the real situation. It was there provided that, for advances to be subsequently made by the appellant, he was to receive assignments of various contracts as they came into existence. By the very nature of the business they were not in existence at the time the agreement was made. The assignments were made under the terms of the contract as soon as money which could be assigned was due on those contracts. Since the parties intended to make specific security for the advances, even though the assignment or the transfer of the security was not made at the actual moment the money was lent to the company, yet equity will impress the property with the obligation created by the contract and compel the observance of the contract's terms. . . .

"Consequently, we have not here a case where the creditor is receiving security or being paid for an antecedent debt. The creation of the debt and the pay-

ment of it were by this agreement, in legal effect, contemporaneous acts.''

It is clear that, before any supplies were furnished or credit extended by respondent, the parties to this transaction all intended and understood that the loans to be made by the bank should be impressed with a lien in favor of the respondent.

The fact that the assignment was in parol does not affect its validity. In 5 C. J. 911, it is said. ''Parol and written equitable assignments are of equal validity.''

Since the facts of this case bring it within the rule of the *Terhune* case, *supra,* we feel that it is unnecessary to review the authorities from other jurisdictions cited by appellant.

The judgment is affirmed.

Tolman, C. J., Steinert, and Holcomb, JJ., concur.