[No. 28483. *En Banc.* April 16, 1942.]

SCHOOL DISTRICT NO. 15, SNOHOMISH COUNTY, *Respondent,* v. PEOPLES NATIONAL BANK OF WASHINGTON, *Appellant,* THE STATE OF WASHINGTON *et al., Respondents,* M. L. ERICKSEN *et al., Defendants.*[1]

[1]Reported in 124 P. (2d) 947.

*Macbride & Williams,* for appellant.

*Leslie R. Cooper, J. W. Dootson,* and *C. P. Brownlee,* for respondent school district.

*The Attorney General* and *Rudolph Naccarato, Assistant,* for respondent state of Washington.

*J. Charles Dennis, Gerald Shucklin, Thomas R. Winter, Samuel O. Clark, Jr., Helen R. Carloss,* and *Julian G. Gibbs,* for respondent United States.

MAIN, J.—This is an interpleader action. At the time of the bringing of the action, the plaintiff, school district No. 15 in Snohomish county, paid into the registry of the court the sum of $9,320.70, which was the retained percentage on a building contract. The state of Washington was made a party defendant, together with a number of other defendants. After the action was instituted, the United States of America interpleaded. The state and, also, the United States sought to recover unemployment insurance taxes which were deducted from the wages of workmen. The Peoples National Bank, West Seattle branch, one of the defendants, asserted a claim to the retained percentage by reason of an assignment from the contractor. The trial was to the court without a jury, and resulted in findings of fact from which it was concluded that the right of the state and of the United States to the fund was superior to that of the bank. Judgment was en-

tered in accordance with the findings and conclusions, from which the bank appealed.

The facts essential to be stated are these: In November, 1938, M. L. Ericksen entered into a contract with school district No. 15 for the construction of an addition to the Edmonds high school building. In March or April, 1939, Ericksen approached the Peoples National Bank, which will be referred to as the bank, with a request for loans to be advanced to him for the purpose of carrying out the contract. Ericksen indicated his willingness to assign to the bank all monies due or payable to him under the contract, for the purpose of securing such advances, when payments of monthly estimates were made.

July 20, 1939, in furtherance of this understanding, Ericksen executed in writing, and delivered to the bank, an assignment of all monies due or to become due on the contract. This assignment was delivered to the school board in September, 1939. An additional confirmatory assignment was made January 25, 1940. The first assignment provided that Ericksen should turn over to the bank the checks which he received from the school district on the monthly estimates. The second assignment provided that the checks should be drawn in favor of the bank. The assignments were accepted by the school district, and the payments were made to the bank, as provided therein. From time to time the bank advanced money to Ericksen, all of which was used by Ericksen for the payment of labor and materials in carrying out the contract.

In the judgment entered, as above indicated; the claims of the state and of the United States were made superior to that of the bank. The state was given a judgment against the fund in the sum of $2,639.94, with interest. The United States was given judgment against the fund in the sum of $2,191.51, with interest.

The bank was given judgment against the fund in the sum of $22,892.16, together with interest. From this it appears that there was sufficient money in the fund to pay both the claim of the state and that of the United States, but not sufficient to pay the bank. In fact, if the bank's claim was prior, it would exceed the amount of the retained percentage paid into the registry of the court. At the time the retained percentage was paid into the registry of the court, the building had been completed and accepted by the school district.

The first question is whether the United States or the bank had a prior and superior right to the fund.

Both assignments provided that: ". . . all monies due or payable, or to become due and payable from Edmonds School District No. 15 under contract for construction of School Building . . ." were assigned to the bank. Money due or to become due upon a contract, such as the one here involved, is assignable. 6 C. J. S. 1060, § 15. A fund to be assignable does not have to be actually existent. It is sufficient if it potentially exists. *Horchover v. Pacific Marine Supply Co.*, 171 Wash. 330, 17 P. (2d) 915.

In *Fidelity Nat. Bank v. Henley*, 24 Wash. 1, 63 Pac. 1119, it was held that an assignment by a contractor of all monies due or to become due under a contract for the construction of a public building, under which twenty per cent of the monies earned from time to time was to be retained by the government until the completion and acceptance of the work, passed to the assignee the equitable title in such retained percentage.

The cases of *Terhune v. Weise*, 132 Wash. 208, 231 Pac. 954, 38 A. L. R. 94, *Philip v. Seattle*, 195 Wash. 386, 81 P. (2d) 279, and *Whiting v. Rubinstein*, 7 Wn. (2d) 204, 109 P. (2d) 312, are, by analogy, substantially to the same effect.

■ 42 U. S. C. A. (Sup.) § 1001, which is under Title VIII of the social security act, provides for a certain percentage of an employee's wages to be deducted. Section 1002 provides that this tax shall be collected by the employer by deducting the amount of the tax from the wages of the employees, and the employer is made liable for the payment of such tax. Section 1007 provides that the taxes mentioned shall be collected by the bureau of internal revenue under the direction of the secretary of the treasury and shall be paid to the treasurer of the United States as internal revenue collections.

26 U. S. C. A. § 3661, which is § 607 of the revenue act of 1934, provides that:

"Whenever any person is required to collect or withhold any internal-revenue tax from any other person and to pay such tax over to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

It thus appears that, even though the tax which the contractor was required to collect and pay over to the United States was a trust fund, it must be collected in the same manner as internal revenue taxes are collected.

■ 26 U. S. C. A. § 3670, which is one of the sections of the internal revenue code, provides that:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to

property, whether real or personal, belonging to such person."

Section 3672 provides that such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until there has been filed by the collector, as therein provided, a notice of claim of lien.

Notices in this case were not filed, as provided in this statute, until the time for filing claims against the retained percentage, fixed by Rem. Rev. Stat., § 10320 [P. C. § 9727-1], had expired. At the time these notices of claim were filed by the internal revenue collector of the United States, the bank, by reason of its assignments, had a superior right to the fund.

As to the state, its claim is based upon a judgment which was rendered in its favor against Ericksen on June 29, 1940, for unpaid contributions payable under the provisions of the unemployment compensation act. This judgment covered the years 1938 and 1939.

Subdivision (c) of § 14, chapter 162, p. 604, Laws of 1937, which is one of the sections of the unemployment compensation act, provides that, in the event of any distribution of an employer's assets pursuant to an order of any court, under the laws of this state, unemployment contributions which had accrued and not been paid would be prior to all other claims, except in two particulars which are not here material. That act did not create a lien, but merely provided for a priority.

Subdivision (c) of § 12, chapter 214, p. 849, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 9998-114 [P. C. § 6233-309]), amended the prior statute and provided that such unpaid compensation should be a lien upon all the assets of the employer, except in two particulars which are not here material.

The two statutes are the same, except one provides for a priority and the other provides for a lien.

In the case of *In re Cascade Fixture Co.*, 8 Wn. (2d) 263, 111 P. (2d) 991, it was held that the 1939 act was not retroactive. This act became effective June 7, 1939. The amount of unpaid compensation which accrued prior to that date and the amount which accrued subsequently are not segregated.

Whether the state's lien, under the 1939 act, would be superior to the right of the bank under the assignments, we do not determine. It seems clear that, as to the amount of the compensation which accrued prior to the effective date of the 1939 act, the bank, under its assignments, would have a superior right.

The judgment will be reversed and the cause remanded, with direction to the superior court to enter a judgment, as herein indicated.

ROBINSON, C. J., MILLARD, STEINERT, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

BLAKE, J. (dissenting)—Under subchapter VIII of the social security act (42 U. S. C. A. (Sup.), § 1001), a tax is levied upon the "income of every individual . . . equal to the following percentages of the wages . . . received by him . . . ," which tax (42 U. S. C. A. (Sup.), § 1002) "shall be collected by the employer of the taxpayer, by deducting the amount of the tax from the wages as and when paid."

Pursuant to § 1002, Ericksen deducted from the wages of his employees on the Edmonds school job the taxes due from them to the United States under § 1001. By virtue of 26 U. S. C. A., § 3661, the wages so withheld by Ericksen constituted, in his hands, *"a special fund in trust for the United States."* As I view it, this "special fund" is an integral part of the $9,320.70 retained percentage of the contract price paid into court

by the school district. Clearly, if the controversy over the right to this "special fund" were between the United States and Ericksen alone, the claim of the government could not be denied.

Now, there is no principle of law more firmly established nor more generally recognized than that the rights of an assignee can be no greater than the rights of his assignor. It is my view, therefore, that, since Ericksen would not be heard to assert a claim to the "special fund" created by his withholding the tax from the wages of his employees, pursuant to § 1002, the appellant (his assignee) should not be permitted to do so.

Section 12, subd. (c), of chapter 214, Laws of 1939, p. 849 (Rem. Rev. Stat. (Sup.), § 9998-114 [P. C. § 6233-309]), amending § 14, chapter 162, Laws of 1937, p. 604, provides:

"In the event of any distribution of an employer's assets pursuant to an order of any court under the laws of this state, including any receivership, probate, legal dissolution, or similar proceeding, or in case of any assignment for the benefit of creditors, composition, or similar proceeding, contributions *then* or thereafter due *shall be a lien upon all the assets of such employer.*" (Italics mine.)

This statute took effect June 7, 1939. The assignment from Ericksen to appellant was made July 20, 1939. This is the distinguishing feature between this and the case of *In re Cascade Fixture Co.*, 8 Wn. (2d) 263, 111 P. (2d) 991, in which the court said:

"As for the 1939 amendment, its language does provide that, in dissolution proceedings, the amounts due to the department of unemployment compensation shall be a lien, prior to all other liens, with certain exceptions. However, in order to apply that provision to the case at bar, it would be necessary to construe the language of the amendment as having a retroactive effect, *due to the fact that the mortgage*

*antedated the enactment of the amendment."* (Italics mine.)

Since, in this case, the amendment (Laws of 1939, chapter 214, § 12 (c), p. 849) antedates the assignment, it would not be giving retroactive effect to the statute to accept it at its face value. Plainly, it imposes a lien on assets of the employers for "contributions *then* . . . due," namely, at the time *"of any distribution of* . . . [his] *assets pursuant to an order of any court under the laws of this state,* . . . " (Italics mine.)

It would seem clear that any order made in this interpleader proceeding will constitute a distribution of Ericksen's assets in contemplation of the statute. I think the judgment should be affirmed.

BEALS, J., concurs with BLAKE, J.

