[No. 31135.   Department Two.   February 11, 1950.]

SEATTLE ASSOCIATION OF CREDIT MEN, *as Assignee, Appellant*, v. HUDSON MACHINERY COMPANY, INC., *Respondent*.[1]

[1]Reported in 214 P. (2d) 681.

*Leopold M. Stern* and *Stuart W. Todd* (of *Todd, Hokanson & White*), for appellant.

*Rex S. Roudebush,* for respondent.

HAMLEY, J.—On April 29, 1948, Hosmer Associates, Inc., (hereinafter referred to as Hosmer) executed and delivered to Seattle Association of Credit Men, a common-law assignment for the benefit of creditors. At the time of this assignment, Hosmer was insolvent. On August 5, 1948, Seattle Association of Credit Men, as assignee, instituted this action against Hudson Machinery Co., Inc., to recover the sum of $759.90 alleged to constitute a voidable preference within the meaning of the state preference act. Laws of 1941, chapter 103 (Rem. Supp. 1941, §§ 5831-4 to 5831-9 [P.P.C. §§ 448-1 to 448-11]). Plaintiff demurred to the affirmative defenses raised in defendant's answer. The demurrer was overruled. Plaintiff elected to stand on the demurrer, and the trial court accordingly entered judgment dismissing the complaint with prejudice. Plaintiff has appealed.

The facts relating to the alleged preference are not in dispute. Hosmer was engaged in the business of selling new and used machinery at Seattle, Washington. A short time before November 20, 1947, Hosmer obtained an order from one Paul Hagedorn, in Walla Walla, Washington, for a 75 HP motor of a certain type. Being unable to fill the order from its own stock, Hosmer purchased such a motor from respondent for the agreed sum of $894, less fifteen per cent, making the sale price to Hosmer net $759.90. By order of Hosmer, respondent shipped the motor to Hagedorn. Re-

spondent reserved no right, title or interest in the motor itself, or in the proceeds from the sale of the motor, but relied upon the general credit of Hosmer.

On December 2, 1947, Hagedorn paid Hosmer $894, representing the retail price of the motor. On December 30, 1947, one day within the four months' period immediately preceding the assignment for the benefit of creditors, Hosmer paid respondent $759.90, to cover the cost of the motor as billed to Hosmer by respondent. The trial court held that this payment was not a voidable preference.

Our state preference act, enacted in 1941, repealed in part and amended in part previous statutes on the subject, and sets forth with particularity the circumstances under which a receiver or assignee of an insolvent corporation may recover payments made by the insolvent to creditors. The term "preference" is defined in this act as follows:

"(c) 'Preference' means a judgment procured or suffered against itself by an insolvent corporation or a transfer of any of the property of such corporation, the effect of the enforcement of which judgment or transfer at the time it was procured, suffered, or made, would be to enable any one of the creditors of such corporation to obtain a greater percentage of his debt than any other creditor of the same class." Rem. Supp. 1941, § 5831-4.

■ Under this statute the payment of $759.90 by Hosmer to respondent must be regarded as a preference if the effect of that transfer was to enable respondent "to obtain a greater percentage of his debt than any other creditor of the same class."

Hosmer being insolvent, we must assume that the general creditors will receive less than one hundred per cent of the debt owed to each of them. By reason of the payment of $759.90 from Hosmer to respondent, the latter received full payment of the debt owed to it. Respondent, then, received payment of a greater percentage of its debt than will the general unsecured creditors. If respondent is to be regarded as in the same "class" as the general unsecured creditors, this payment must accordingly be regarded as a preference within the meaning of § 5831-4 (c).

Respondent acknowledges that it is an unsecured creditor. It contends, however, that because of the nature of this transaction, whereby the payment made by the insolvent was balanced by funds or property supplied by the creditor, respondent is in a different class than other unsecured creditors.

The word "class" is not defined in the state preference act, or in other statutes relating to assignments for the benefit of creditors. See Rem. Rev. Stat., §§ 1086 to 1103. Likewise, the Federal bankruptcy act, while using the word "class" in the same way as in the above-quoted statute of our state (see Bankruptcy Act, § 60; 11 U. S. C., § 96 (a)), neither defines the word nor in terms states what creditors are in the same class. However, in applying the bankruptcy act, the courts, by referring to various provisions of the act relating to the priority of debts and the special rights of certain types of creditors, have developed a concept of "class" which may be appropriately applied in interpreting our own statute. We have frequently consulted court decisions and text books dealing with the analogous provisions of the bankruptcy act. See *Lloyd v. Sichler,* 94 Wash. 611, 162 Pac. 979; *Seattle Ass'n of Credit Men v. Daniels,* 15 Wn. (2d) 393, 130 P. (2d) 892; *Stern v. Lone,* 32 Wn. (2d) 785, 203 P. (2d) 1074.

■ The test to be applied in determining whether creditors are of the same "class," as laid down in the leading case of *Swarts v. Fourth Nat. Bank,* 117 Fed. 1, and restated in Collier on Bankruptcy, is as follows:

"Creditors who, *in the absence of preferences,* are entitled to receive the same percentage upon their claims out of the estate of the bankrupt, are members of the same class. Those who are entitled to different percentages are of different classes." (Italics ours.) 3 Collier on Bankruptcy (14th ed.), § 60.34, p. 860.

■ Applying this test in the instant case, can it be said that, if respondent had not received this transfer of funds, it would be entitled to a greater percentage of the insolvent's estate than other unsecured creditors?

The answer is no. Respondent does not claim any priority by reason of the various statutes creating liens or otherwise establishing priority of debts. (See, for example, Rem. Rev. Stat., §§ 1129, 1131-4, 1132, 1141, 1149, 1154, 1156, 7682, 11260.) Respondent was not entitled to a greater percentage because of any security it held, for it held none. It is this fact which distinguishes the instant case from the cases cited by respondent—*Lloyd v. Sichler, supra; Terhune v. Weise*, 132 Wash. 208, 231 Pac. 954, 38 A. L. R. 94; *Horchover v. Pacific Marine Supply Co.*, 171 Wash. 330, 17 P. (2d) 915; *Seattle Ass'n of Credit Men v. Bank of California*, 177 Wash. 130, 30 P. (2d) 972; and *Whiting v. Rubinstein*, 7 Wn. (2d) 204, 109 P. (2d) 312.

■ Respondent was not entitled to a greater percentage because of credit extended to the insolvent in connection with the sale of the motor, whether or not the motor was resold at a profit, for the state preference act expressly limits any set-off to credit or credits given wholly within the four months' period. The applicable provision reads as follows:

"In any action by a receiver against a creditor to avoid and recover a preference such creditor may set off against the amount of such preference an amount equal to any credit or credits given by such creditor to the corporation within four (4) months prior to the date of application for the appointment of the receiver when such credit or credits were given in good faith without security of any kind for property which became a part of the assets of the corporation." Rem. Supp. 1941, § 5831-7.

■ Since respondent, as a *claimant* against the estate of the insolvent, would not have been entitled to a greater percentage of its claim than any other unsecured creditor, then, under the test referred to above, it was in the same class with them. The payment in question was accordingly a preference. Since the preference was extended within the four months' period, it was voidable and recoverable in this action. Rem. Supp. 1941, § 5831-6.

Respondent, in its argument, has emphasized the fact that the motor was resold at a profit. To the extent that

this is intended to show that respondent is in a different class than other unsecured creditors, it is answered by what has been said above. On the other hand, if it is contended that this circumstance shows that the payment in question did not diminish the insolvent's estate, and so was not a transfer of property within the meaning of the act, such contention is negatived by the express terms of Rem. Supp. 1941, § 5831-7, quoted above.

■ Whatever may have been the law prior to the enactment of the state preference act in 1941, the legislature has now provided, with respect to preference payments made in discharge of unsecured credits, a definite cut-off date, represented by the beginning of the four months' period. There may be inquiry beyond that date with respect to any claim that a preference represents payment of a credit which has priority or lien protection under statute, or which is secured by agreement of the parties. But absent such a claim, all inquiry regarding the status of a preference is limited to what took place within the four months' period. Thus secured or unsecured credits received by the insolvent from the creditor within the four months' period may be set off against the preference, whether or not the insolvent made a profit on the transaction. But credits received by the insolvent from the creditor prior to the four months' period, unless enjoying statutory priority or secured in some manner, may not be set off or taken into consideration in any other way, whether or not the insolvent made a profit on the transaction.

For the same reason, that is, that the cut off date provided in Rem. Supp. 1941, § 5831-7, is now controlling as to the type of transaction in question, respondent's other contentions to the effect that the sale of the motor and the payment were "contemporaneous;" that the payment was made "in the ordinary course of business;" and that the payment was made in connection with a transaction the "net result" of which was to increase the value of the estate, are in-

apposite, assuming that they are meritorious in other respects.

The judgment is reversed and the cause remanded, with instructions to enter judgment for appellant.

ROBINSON, MALLERY, and HILL, JJ., concur.

SIMPSON, C. J., dissents.

March 20, 1950. Petition for rehearing denied.